# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON
### February 19, 2013 Session

## RALEIGH COMMONS, INC. v. SWH, LLC, ET AL.

**Direct Appeal from the Circuit Court for Shelby County**
**No. CT-000052-06      Donna M. Fields, Judge**

<hr>

**No. W2011-01298-COA-R3-CV - Filed June 28, 2013**

<hr>

This appeal arises from a prolonged dispute among business associates which they have come to refer to as a "business divorce." The parties in this matter, each doctors, formed a limited liability company for the purpose of acquiring property and constructing a medical office building on the property. In order to acquire the property from the current owner, the doctors executed an assumption and modification agreement whereby the LLC and the doctors each individually agreed to be jointly and severally liable to the current owner for its obligations on a promissory note. Subsequently, one of the doctors, the Appellee, withdrew membership from the LLC and executed an indemnity agreement with the remaining LLC members whereby the Appellee would be held harmless from any liability of the LLC, including the note. Thereafter, the LLC and its remaining members defaulted on the note, and the holder of the note filed a complaint against the Appellee, the LLC, and the individual LLC members, seeking to collect the balance due under the note. In order to avoid having a judgment entered against him, the Appellee purchased the note and pursued a claim against the LLC and its individual members for indemnification and breach of the note. Ultimately, the trial court granted the Appellee's motion for summary judgment on his indemnification claim, awarded him attorney's fees, costs, and prejudgment interest, and dismissed the Appellant's cross-claims against the Appellee. After thoroughly reviewing the record, we affirm in part, reverse in part, vacate in part, and remand for further proceedings.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed in part, Reversed in part, Vacated in part and Remanded**

DAVID R. FARMER, J., delivered the opinion of the Court, in which ALAN E. HIGHERS, P.J., W.S., and J. STEVEN STAFFORD, J., joined.

John J. Heflin, III and Kenneth P. Jones, Memphis, Tennessee, for the appellant, Stevan Himmelstein, M.D.

Saul C. Belz and Michael David Tauer, Memphis, Tennessee, for the appellee, Joseph Weinstein, M.D.

Robertson Morrow Leatherman, Memphis, Tennessee, for the appellee, Whitney Slade, M.D.

**OPINION**

### I. Background and Procedural History

Joseph Weinstein, M.D. ("Dr. Weinstein"), Stevan Himmelstein, M.D. ("Dr. Himmelstein"), and Whitney Slade, M.D. ("Dr. Slade") formed SWH, LLC ("SWH") for the purpose of purchasing and developing real property. In particular, the doctors were interested in constructing a medical office building and developing the surrounding property located at Raleigh Commons Boulevard in Memphis, Tennessee. At that time, the property was owned by American Way Builders, Inc. ("American Way") which purchased the property from Raleigh Commons, Inc. ("Raleigh Commons") by executing a Promissory Note (the "Note") in the principal amount of $1,264,559.00. In February 1998, in order to acquire the property, SWH and its individual members executed an Assumption and Modification Agreement assuming American Way's obligation to Raleigh Commons under the Note. Pursuant to the Assumption and Modification Agreement, SWH and its individual members each agreed to be jointly and severally liable to Raleigh Commons under the Note to the same extent and for all purposes as if they were original makers and borrowers of the Note. Each of the doctors signed the Assumption and Modification Agreement twice – once as a member of SWH and once in their individual capacities evidencing their personal liability.

Subsequently, Dr. Weinstein decided to give up his ownership in SWH. In exchange and in consideration for Dr. Weinstein's ownership interest, SWH and its individual members, including new members Sherman McGill ("Mr. McGill"), John Scott ("Mr. Scott"), and Thomas Tello ("Mr. Tello"), transferred certain portions of its property to RC Office, LLC ("RC Office"), a new entity formed and owned by Dr. Weinstein, Dr. Himmelstein, and Dr. Slade. The purpose of forming RC Office was to own and manage the medical office building and assume the debt related to it. This agreement was evidenced by the parties' execution of the Assignment and Agreement in November 1999. Pursuant to the Assignment and Agreement, SWH and its individual members agreed to indemnify and hold Dr. Weinstein harmless from any liability arising from SWH's operations, including but not limited to the Note. Further, SWH agreed to retain the remainder of the property and the debt related to its operations.

In October 2002, SWH and its individual members executed an Extension Agreement whereby the due date of the Note was extended to November 1, 2005. In November 2005,

however, SWH and its individual members defaulted on their obligation to pay the Note. As a result, on January 6, 2006, Raleigh Commons filed a complaint in the Circuit Court of Shelby County against SWH, Dr. Weinstein, Dr. Himmelstein, Dr. Slade, and Mr. McGill to collect the balance due under the Note. In response, Dr. Weinstein and Dr. Himmelstein filed answers containing general denials. Thereafter, on April 13, 2006, Dr. Weinstein filed a cross-complaint in which he argued that, to the extent he was liable for amounts owing under the Note, he was entitled to indemnification from Dr. Himmelstein, Dr. Slade, and Mr. McGill pursuant to the Indemnity Provisions in the Assignment and Agreement.

Subsequently, Raleigh Commons filed a motion for summary judgment against Dr. Weinstein for the outstanding liability on the Note. On September 28, 2006, instead of allowing a judgment to be entered against him, Dr. Weinstein opted to purchase the Note from Raleigh Commons for $304,218.00. This amount included the $236,000.00 principal balance remaining on the Promissory Note, accrued interest of $15,419.82, and attorney's fees totaling $52,798.38. Thereafter, Dr. Weinstein, now as holder of the Note, sought to collect from the remaining obligors.

On June 28, 2007, Dr. Weinstein filed his First Amended Cross-Claim in which he argued that Dr. Himmelstein, Dr. Slade, Mr. McGill, and SWH each assumed liability for the Note as makers and guarantors. Dr. Weinstein further argued that each was liable to him pursuant to the Indemnity Provisions contained in the Assignment and Agreement.[1] Thereafter, on October 23, 2008, the trial court entered an order granting partial summary judgment in favor of Dr. Weinstein against Dr. Himmelstein in which it ruled that Dr. Weinstein had the right to enforce the Note as the holder, and that Dr. Himmelstein was jointly and severally liable on the Note. Subsequently, the trial court granted Dr. Weinstein's motions for default judgment and partial summary judgment against SWH and Dr. Slade regarding their liability under the Note.

On January 14, 2009, Dr. Himmelstein filed his Second Amended Answer to Dr. Weinstein's Cross-Claim, and filed Cross-Claims against Dr. Weinstein, Dr. Slade, Mr. McGill and SWH, and a Third-Party Complaint against RC Office. Specifically, Dr. Himmelstein asserted claims against Dr. Weinstein for an accounting, declaratory and injunctive relief, negligent and/or intentional misrepresentation, breach of contract, contribution and indemnity, breach of duty of good faith and fair dealing, breach of fiduciary duty, and unjust enrichment arising out of alleged mismanagement of RC Office. Following Dr. Weinstein's filing of several dispositive motions, the trial court entered orders dismissing Dr. Himmelstein's claims for unjust enrichment, breach of duty of good faith and fair

_____

[1]On July 26, 2007, Raleigh Commons was dismissed by the trial court pursuant to a consent order and is not involved in this appeal.

dealing, and breach of fiduciary duty.

On May 15, 2009, in order to determine the amount owed to Dr. Weinstein under the Note, the trial court conducted a writ of inquiry, after which it concluded that Dr. Himmelstein, Dr. Slade, and SWH were jointly and severally liable to Dr. Weinstein for $319,544.00, comprised of the principal amount due on the Note, accrued interest, and an award of attorney's fees and costs associated with collection as provided for in the Note.[2] On the same day, Dr. Weinstein filed an affidavit in support of his request for attorney's fees. Thereafter, on November 19, 2009, the trial court entered its Order Awarding Fees to Dr. Weinstein and Reserving Partial Collection in which it concluded:

> This cause came to be heard on Application of [Dr. Weinstein] for the award of attorney's fees by Dr. Joseph Weinstein, the Opposition to Application of Dr. Stevan Himmelstein, Affidavit of John Speer, Esq., in support of Dr. Weinstein's application for fees, argument of Counsel and the entire record in this cause, from all of which the Court finds as follows:

> In consideration of the complexity and length of representation, the Court finds that the fees and expenses requested by the attorneys for Dr. Weinstein is reasonable and is hereby awarded.

> The attorneys for Dr. Joseph Weinstein are hereby authorized to collect only twenty percent of the total fee until the parties agree as to a percentage liability, or until the Court can conduct a full hearing on this matter to determine contribution liability of each party.

On November 30, 2009, Dr. Weinstein filed a motion for summary judgment as to all outstanding claims in which he was involved, and Dr. Himmelstein filed a motion for default judgment on his cross-claims against Dr. Slade, Mr. McGill, SWH, and RC Office. On January 15, 2010, the trial court entered the following orders: Order Granting Dr. Weinstein's Motion to Dismiss Dr. Himmelstein's Claim for Unjust Enrichment, reasoning that such claim failed to state a claim upon which relief can be granted because of the existence of an express contract; Order Granting Dr. Weinstein's Motion to Dismiss Dr.

---

[2]The Note provides, in part, that:

If this Note is placed in the hands of an attorney for collection, by suit or otherwise, or to protect the security for its payment or to enforce its collection, the undersigned agree to pay all costs of collection and litigation, including, but not limited to a reasonable attorneys fee . . . .

Himmelstein's Claims for Breach of Duty of Good Faith and Fair Dealing, and for Breach of Fiduciary Duty, reasoning in part that the latter cause of action failed to state a claim upon which relief can be granted because Tenn. Code Ann. § 48-240-102 defines the fiduciary duty of members of a member-managed LLC as one owing to the LLC, not to individual members. Thereafter, on January 22, 2010, the trial court entered an order granting Dr. Himmelstein's motion for default judgment on his cross-claims against Dr. Slade, Mr. McGill, SWH, and RC Office.

On March 3, 2011, the trial court entered its order granting summary judgment in favor of Dr. Weinstein as to all outstanding claims against him and directed entry of a final judgment. The trial court's order provides, in pertinent part:

<u>HIMMELSTEIN'S CLAIMS AND AFFIRMATIVE DEFENSES</u>

9. In his various amended pleadings, Himmelstein has asserted numerous claims against Weinstein, all of which this Court finds to be without merit. The claims asserted by Himmelstein, discussed below, are derived from Stevan I. Himmelstein, M.D.'s Second Amended Answer to Cross-Complaint of Joseph Weinstein, M.D.; Cross-Claim against Joseph Weinstein, M.D., Whitney T. Slade, M.D., Sherman McGill, and SWH, LLC; and Third-Party Complaint against RC Office, LLC, for Damages and Equitable Relief, Including an Accounting, filed January 14, 2009.

10. Himmelstein's First Count seeks an accounting. This Court denies this claim as being moot, as Himmelstein has obtained, or has the right to obtain via third parties, all relevant information concerning RC Office, LLC.

11. Himmelstein's Second Count seeks three items of declaratory and/or injunctive relief with regard to Weinstein.

a. First, Himmelstein seeks to have the ownership interests of RC Office, LLC readjusted to reflect what Himmelstein claims to be the capital contributions of the members. Preliminarily, Himmelstein acknowledges that he has failed to produce any documents that evidence any deposits he allegedly made to RC Office, LLC. Further, even if the members had made contributions as alleged by Himmelstein, the Operating Agreement of RC Office, LLC recites the ownership interest of the members, and said interests are not linked to capital accounts. As such, this Court denies this claim.

-5-

b. Second, Himmelstein asks that Weinstein be removed as managing member of RC Office, LLC. This Court denies this claim as being moot. Weinstein was never elected as managing member of RC Office, LLC, and, to the extent he served as acting managing member, Weinstein has since resigned from this position. At this point in time, RC Office, LLC has no managing member.

c. Third, Himmelstein asks this Court to compel Weinstein's medical practice to enter into a written lease with RC Office, LLC. This Court denies this claim as being moot, as Weinstein's medical practice is a party to an existing, written lease with RC Office, LLC.

12. Himmelstein's Third Count alleges Negligent Misrepresentation and/or Intentional Misrepresentation. The bases of Himmelstein's allegations are that the medical practices of Slade and Weinstein did not have leases for use of the office building owned by RC Office, LLC and that, at the time the various transaction documents were executed, Weinstein told Himmelstein that the rental income to be generated by the office building in the future would cover all of the building's expenses.

13. Himmelstein now acknowledges that, at the time the relevant documents, including the Assignment and Agreement, were executed, both medical practices were parties to valid, written leases for the use of the office building. Weinstein's alleged comment about the income from the building exceeding expenses, which Weinstein denies having made, but does not contest having made for purposes of this Motion for Summary Judgment, is not a statement of current or past fact and cannot, therefore, be the basis of a fraud or misrepresentation claim.

14. This legal principle aside, in his deposition, Himmelstein testified, under oath, that Weinstein's statement was true when made. Further, Himmelstein acknowledges that he did not conduct any due diligence with regard to the transaction documents, so he cannot satisfy the "reasonable reliance" element of a misrepresentation claim. Therefore, the Court denies Himmelstein's [sic] misrepresentation claim.

15. This Court has already dismissed Himmelstein's Fourth and Fifth Counts as failing to state a claim upon which relief can be granted. (See, Order

Granting Dr. Joseph Weinstein's Motion to Dismiss Counts III and IV of Dr. Stevan I. Himmelstein's Amended Cross Complaint, entered January 15, 2010.)

16. Himmelstein's Sixth Count alleges that Weinstein breached the RC Office Operating Agreement, but Himmelstein has not produced evidence to substantiate either his allegation of breach or of any damages resulting to RC Office, LLC. As such, this Court denies this claim.

17. Himmelstein's Seventh Count alleges unjust enrichment. Himmelstein has not produced evidence to substantiate any unjust enrichment by Weinstein, nor has Himmelstein produced evidence to substantiate his claim that Weinstein has retained money and/or benefits rightly belonging to Himmelstein. Therefore, this Court denies this claim.[3]

18. Himmelstein's Eighth Count alleges that Himmelstein is entitled to contribution and/or indemnity from Weinstein because Weinstein, like Himmelstein, assumed primary liability under the Promissory Note. Regardless of whether this would be a colorable argument with regard to Himmelstein's liability to Weinstein because of Weinstein's being a holder of the Promissory Note, the doctrines of contribution and indemnity, as asserted by Himmelstein, have no bearing on Himmelstein's liability to Weinstein pursuant to the indemnification provisions of the Assignment and Agreement.

## WEINSTEIN'S INDEMNIFICATION CLAIMS

19. As noted above, the indemnification provisions of the Assignment and Agreement specifically include the Promissory Note at issue. At the time Weinstein purchased the Promissory Note, it represented a legally enforceable obligation. (*See*, Order on Dr. Joseph Weinstein's Motion for Partial Summary Judgment Against Dr. Stevan I. Himmelstein, M.D., entered October 23, 2008; Order on Dr. Joseph Weinstein's Motion for Partial Summary Judgment Against Whitney T. Slade, Sherman McGill and SWH, LLC, entered on January 9, 2009; and Order on Writ of Inquiry to Determine Principal and

---

[3]As correctly noted by Dr. Weinstein in his brief, it appears that the trial court erroneously included this language regarding Dr. Himmelstein's unjust enrichment claim. In reality, the trial court already granted Dr. Weinstein's Motion to Dismiss Dr. Himmelstein's Claim for Unjust Enrichment on January 15, 2010, reasoning that such claim failed to state a claim upon which relief can be granted because of the existence of an express contract.

Interest Owed Pursuant to Count II of Weinstein's First Amended Complaint, entered July 2, 2009). Accordingly, Weinstein's purchase of the Promissory Note was not voluntary.

20. None of the affirmative defenses asserted by Himmelstein bar or reduce Weinstein's entitlement to recover as to Himmelstein or any of the other Indemnitors.

    a. All of the signatures on the Assignment and Agreement are genuine, and the Assignment and Agreement is supported by adequate consideration, both by its own terms, and also in the form of Weinstein's withdrawing from SWH, LLC but agreeing to remain liable on the Promissory Note and certain other obligations of SWH, LLC.

    b. Himmelstein has not produced any evidence of unclean hands, bad faith, and/or self dealing. Himmelstein urges this Court to refuse to grant relief to Weinstein because of an entry on the books of RC Office, LLC reflecting that the money paid by Weinstein to purchase the Promissory Note as a debt owed by RC Office, LLC to Weinstein. At his deposition, Weinstein testified that he had no knowledge of how the entry came to be on the RC Office, LLC records and that RC Office, LLC has no obligation to him with regard to the money he paid to purchase the Promissory Note. This Court finds that the deposition testimony of RC Office, LLC's accountant is incompetent to serve as evidence that Weinstein directed that the entry be placed on the books of RC Office, LLC because the testimony was not based on firsthand knowledge.

    c. The Court finds that there are no indispensible [sic] parties that are not a part of this lawsuit.

    d. The Court finds that Himmelstein has produced no evidence supporting estoppel, waiver, accord and satisfaction, payment, release, or that Weinstein failed to reasonably mitigate his damages.

21. Pursuant to the indemnification provisions of the Assignment and Agreement, Weinstein is entitled to indemnification from Slade, Himmelstein,

McGill, Tello, and SWH, LLC, all of whom are jointly and severally liable to Weinstein, with regard to Weinstein's purchase of the Promissory Note. In addition, Weinstein is entitled to prejudgment interest at a rate of ten percent (10%) *per annum*, pursuant to Tenn. Code Ann. § 47-14-123, and he is entitled to recover his costs and attorney's fees.

22. As noted above, Weinstein paid $304,218.20 on September 28, 2006, which gave rise to an immediate right to indemnification from the Indemnitors, as discussed above. Interest owing on this payment, at a rate of 10% per annum, from September 28, 2006 until March 9, 2011, is $135,272.91.

23. Pursuant to Rule 20 of the Local Rules of the Circuit Court for the Thirtieth Judicial District, affidavits regarding Weinstein's attorney's fees in this action have been submitted by Saul C. Belz and Michael W. Mitchell. The Court awards Weinstein $152,333.78 in costs and attorney's fees, which the Court finds to be reasonable in light of the complexity and length of representation,

24. This Order fully and finally resolves all issues in this litigation involving Weinstein. None of the remaining claims impact Weinstein or the relief to which he is entitled, as set forth above. As such, pursuant to Rule 54.02 of the Tennessee Rules of Civil Procedure, there is no just reason for delaying Weinstein's option to execute this Judgment as to any of the other parties from whom Weinstein is entitled to recover, pursuant to this Order.

25. The Court incorporates herein by reference its Order on Writ of Inquiry to Determine Principal and Interest Owed Pursuant to Count II of Weinstein's First Amended Complaint, entered July 2, 2009, which finds Himmelstein, Slade, McGill, and SWH, LLC to be jointly and severally liable to Weinstein pursuant the Promissory Note in the principal amount of $236,000.00, plus interest at 10% *per annum* as of November 1, 2005 (which, as of March 9, 2011, amounts to $126,340.82), plus attorney's fees and costs of collection. In addition, the Court incorporates herein by reference its Order Awarding Fees and Reserving Partial Collection, entered on November 19, 2009, which awards Weinstein his costs and attorney's fees (associated with collection of the Promissory Note), through the [sic] April 30, 2009, in the amount $73,199.58. Pursuant to these two Orders, the total amount due to Weinstein pursuant to the Promissory Note, as of the date of this Order, is $435,540.40.

26. The Court has previously granted Himmelstein a judgment on his Cross-Claim against Slade, McGill, and SWH, and upon his Third Party Complaint against RC Office, LLC and hereby reaffirms such rulings. (See Order Granting Himmelstein's Motion for Default Judgment entered on January 22, 2010.)

IT IS, THEREFORE, ORDERED, ADJUDGED, AND DECREED that:

A. Final Judgment (for amounts owing pursuant to the Promissory Note) in the amount of $435,540.40 be, and the same is hereby, entered in favor of Joseph Weinstein and against Whitney T. Slade, Stevan I. Himmelstein, Sherman McGill, Tomas Tello, and SWH, LLC, all of whom are jointly and severally liable to Weinstein;

B. Final Judgment (for amounts owing pursuant to the indemnification agreement) in the amount of $591,824.89 be, and the same is hereby, entered in favor of Joseph Weinstein and against Whitney T. Slade, Stevan I. Himmelstein, Sherman McGill, Tomas Tello, and SWH, LLC, all of whom are jointly and severally liable to Weinstein, which amount is inclusive of the amount awarded in Paragraph A, supra;

C. Final Judgment in the amount of $591,824.89 is entered in favor of Stevan I. Himmelstein against Whitney T. Slade, Sherman McGill, and SWH, LLC, each of whom is jointly and severally liable to Himmelstein;

D. Final Judgment is entered in favor of Himmelstein against RC Office, LLC;

E. The Clerk is directed to immediately enter Final Judgment as set forth herein, there being no just reason for delay;

F. All claims, by any and all parties, against Weinstein are hereby denied and dismissed; and,

G. Court costs will be assessed against Slade, McGill, Tello, and SWH.

Subsequently, on October 12, 2011, this Court entered an order in which we concluded that the trial court's order granting Dr. Weinstein's motion for summary judgment was not a final order because it did not contain an adjudication of the contribution liability of each party. On November 14, 2011, the trial court entered its Order Determining Dr. Himmelstein's

-10-

Proportionate Liability Under the Promissory Note and Entering Final Judgment which provides:

The Court rules that Weinstein and Himmelstein are the only solvent obligors under the Promissory Note. Weinstein and Himmelstein have stipulated, for purposes of the instant motion, that any obligation of Sherman McGill has been discharged in bankruptcy and that SWH, LLC has no capacity to contribute. The Court rules that because Weinstein and Himmelstein have further stipulated, for purposes of the instant motion, that Whitney Slade has judgments entered against him that are many times greater than his assets, he too is insolvent for purposes of ruling on proportionate liability.

It further appearing to the Court that Joseph Weinstein, having purchased the Promissory Note and having paid certain attorney's fees in conjunction with the collection thereof by the obligee, is entitled to recover from Stevan Himmelstein fifty percent (50%) of the liability under the Promissory Note (including interest and attorney's fees); and

If [sic] further appearing to the Court that the amounts of the judgments awarded in this Court's Order Granting Joseph Weinstein's Motion for Summary Judgment and Entry of Final Judgment must be revised to reflect the accumulation of pre-judgment interest from March 11, 2011 until the date of entry of the instant Order; and

It further appearing to the Court that, with the exception of resolution of the proportionate liability issue raised by the Court of Appeals and the revisions to the amount of the judgments to reflect accumulated interest, this Court should reaffirm its March 11, 2011 Order Granting Joseph Weinstein's Motion for Summary Judgment and Entry of Final Judgment and should supplement that Order to reflect this Court's findings regarding Stevan Himmelstein's liability to Joseph Weinstein under the Promissory Note;

IT IS THEREORE [sic] ORDERED as follows:

1.  Final Judgment (for amounts owing pursuant to the Promissory Note) in the amount of $225,755.41 be, and the same is hereby, entered in favor of Joseph Weinstein and against Stevan Himmelstein;

2.  Final Judgment (for amounts owing pursuant to the indemnification agreement) in the amount of $612,411.722 be, and the same is hereby, entered

in favor of Joseph Weinstein and against Whitney Slade, Stevan Himmelstein, Sherman McGill, Tomas Tello, and SWH, LLC, all of whom are jointly and severally liable to Weinstein, which amount is inclusive of the amount awarded in Paragraph 1, supra, and

3. With the exception of the resolution of the proportionate liability issue raised by the Court of Appeals and the revisions to the amounts of the judgments to reflect accumulated pre-judgment interest, all other provisions of this Court's Order Granting Joseph Weinstein's Motion for Summary Judgment and Entry of Final Judgment, entered on March 11, 2011, are incorporated herein by reference.

Dr. Himmelstein and Dr. Slade each timely filed a notice of appeal to this Court.

## II. Issues Presented

Dr. Himmelstein presents the following issues, as restated, for our review:

(1) Whether the trial court erred in awarding Dr. Weinstein attorney's fees and costs based upon the Indemnity Provisions in the Assignment and Agreement for legal services performed after Dr. Weinstein purchased the Note,

(2) Whether the trial court erred in granting Dr. Weinstein's motion for summary judgment on his indemnification claim,

(3) Whether the trial court erred in granting Dr. Weinstein's motion for summary judgment on Dr. Himmelstein's affirmative defenses,

(4) Whether the trial court erred in dismissing or granting summary judgment in favor of Dr. Weinstein on Dr. Himmelstein's cross-claims against Dr. Weinstein for breach of fiduciary duty, breach of the RC Office Operating Agreement, and unjust enrichment, and

(5) Whether the trial court erred in awarding Dr. Weinstein $612,411.72, which sum is 259% of the outstanding principal balance Dr. Weinstein claimed was due on the Note of $236,000.00, and also in awarding Dr. Weinstein prejudgment

-12-

interest at ten percent per annum, pursuant to Tennessee Code Annotated section 47-14-123, rather than a lesser interest rate reflective of market conditions.

In addition, Dr. Slade argues that the trial court erred by assessing damages against him without first conducting a writ of inquiry. Lastly, Dr. Weinstein argues that he is entitled to attorney's fees and costs incurred on appeal.

### III. Standard of Review

We review the trial court's findings of fact with a presumption of correctness unless the evidence preponderates otherwise. Tenn. R. App. P. 13(d). Accordingly, we will not reverse the trial court's factual findings unless they are contrary to the preponderance of the evidence. We review the trial court's conclusions on matters of law *de novo*, however, with no presumption of correctness. Tenn. R. App. P. 13(d). Our review of a trial court's application of the law to the facts is *de novo*, with no presumption of correctness. *State v. Ingram*, 331 S.W.3d 746, 755 (Tenn. 2011).

A trial court's decision to grant or deny a motion for summary judgment presents a question of law. Our review is, therefore, *de novo* with no presumption of correctness. *Kinsler v. Berkline, LLC*, 320 S.W.3d 796, 799 (Tenn. 2010) (citing *Blair v. W. Town Mall*, 130 S.W.3d 761, 763 (Tenn. 2004). As such, "we must freshly determine whether the requirements of Tenn. R. Civ. P. 56 have been met." *Hunter v. Brown*, 955 S.W.2d 49, 50–51 (Tenn. 1997) (citing *Gonzales v. Alman Constr. Co.*, 857 S.W.2d 42, 44–45 (Tenn. Ct. App. 1993)).

Summary judgment is appropriate only where the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits . . . show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Tenn. R. Civ. P. 56.04. The burden is on the moving party to demonstrate this by either: (1) affirmatively negating an essential element of the non-moving party's claim; or (2) showing that the non-moving party will not be able to prove an essential element at trial. *Hannan v. Alltel Publ'g Co.*, 270 S.W.3d 1, 8–9 (Tenn. 2008). "It is not enough for the moving party to challenge the nonmoving party to 'put up or shutup' or even to cast doubt on a party's ability to prove an element at trial." *Id.* at 8. If the motion is properly supported, "[t]he burden of production then shifts to the nonmoving party to show that a genuine issue of material fact exists." *Id.* at 5 (citing *Byrd v. Hall*, 847 S.W.2d 208, 215 (Tenn. 1993)). The non-moving party may accomplish this by:

(1) pointing to evidence establishing material factual disputes that were

-13-

overlooked or ignored by the moving party; (2) rehabilitating the evidence attacked by the moving party; (3) producing additional evidence establishing the existence of a genuine issue for trial; or (4) submitting an affidavit explaining the necessity for further discovery pursuant to Tenn. R. Civ. P. 56.06.

*Martin v. Norfolk S. Ry. Co.*, 271 S.W.3d 76, 84 (Tenn. 2008) (citations omitted).

When reviewing the record, we must determine whether factual disputes exist. "In doing so, we must consider the pleadings and the evidentiary materials in the light most favorable to the movant's opponent, and we must draw all reasonable inferences in the opponent's favor." *Hunter*, 955 S.W.2d at 51 (citing *Byrd*, 847 S.W.2d at 210–11). If we discover a disputed fact, we must "determine whether the fact is material to the claim or defense upon which summary judgment is predicated and whether the disputed fact creates a genuine issue for trial." *Mathews Partners, L.L.C. v. Lemme*, No. M2008–01036–COA–R3–CV, 2009 WL 3172134, at *4 (Tenn. Ct. App. Oct. 2, 2009) (citing *Byrd*, 847 S.W.2d at 214). "A disputed fact is material if it must be decided in order to resolve the substantive claim or defense at which the motion is directed." *Byrd*, 847 S.W.2d at 215. A genuine issue exists if "a reasonable jury could legitimately resolve the fact in favor of one side or the other." *Id.* The grant of summary judgment is only appropriate if "the evidence and the inferences reasonably drawn from the evidence permit reasonable persons to reach only one conclusion—that the moving party is entitled to a judgment as a matter of law." *CAO Holdings, Inc. v. Trost*, 333 S.W.3d 73, 82 (Tenn. 2010) (citing *Kinsler*, 320 S.W.3d at 801; *Giggers v. Memphis Hous. Auth.*, 277 S.W.3d 359, 364 (Tenn. 2009)). When a dispute exists or there is any uncertainty regarding a material fact, however, the trial court must "overrule any motion for summary judgment in such cases, because summary judgment proceedings are not in any sense to be viewed as a substitute for a trial of disputed factual issues." *Evco Corp. v. Ross*, 528 S.W.2d 20, 25 (Tenn. 1975).

## IV. Discussion

The disposition of this appeal centers around the Indemnity Provisions contained in the Assignment and Agreement that the parties executed after Dr. Weinstein withdrew from SWH. As such, our discussion begins by interpreting the language of the Indemnity Provisions.

The interpretation of a contract is a matter of law that we review *de novo*, with no presumption of correctness for the determination of the trial court. *84 Lumber Co. v. Smith*, 356 S.W.3d 380, 383 (Tenn. 2011). The "cardinal rule" of contract construction is to ascertain the intent of the parties and to effectuate that intent consistent with applicable legal

-14-

principles. *Frizzell Constr. Co. v. Gatlinburg, L.L.C.*, 9 S.W.3d 79, 85 (Tenn. 1999). When the language of the contract is plain and unambiguous, courts determine the intentions of the parties from the four corners of the contract, interpreting and enforcing it as written. *Int'l Flight Ctr. v. City of Murfreesboro*, 45 S.W.3d 565, 570 (Tenn. Ct. App. 2000).

The Indemnity Provisions provide, in pertinent part, as follows:

4. As part of the consideration for this Agreement and the reorganization of the Membership in SWH, SWH shall continue to be liable for and shall discharge any and all other indebtedness, loans, financial obligations, or liabilities which may be in existence as may have otherwise been originated and incurred by SWH. SWH, and its Members, which Membership has been modified as of this date, and includes as its currently existing Members; Whitney T. Slade, Stevan I. Himmelstein, Sherman G. McGill, John L. Scott and Tomas Tello, hereby ratify and confirm that SWH shall continue to be liable for any and all said prior indebtedness, and that SWH and its individual Members shall be jointly and severally liable to indemnify and hold Weinstein, the withdrawing Member from SWH, harmless from any and all said liability or indebtedness, including any and all indebtedness, claims, demands, costs, expenses, damages or liabilities which might be associated therewith, including but not limited to the reimbursement of any and all costs and expenses incurred in defending any and all said action including reasonable attorneys fees and Court costs associated with, or in any manner arising out of any of the activities, enterprises or operations of SWH, for which Weinstein will no longer be a part, including, but not limited to the following:

A. Any and all indebtedness against that approximate 5.9 acre parcel of property owned by SWH which is located on or about Austin Peay Highway and contiguous to 4901 Raleigh Commons Drive, Memphis, TN 38128, including, but not limited to, the Promissory Notes executed and/or assumed by SWH in favor of Raleigh Commons, Inc. bearing Instrument No. HC 8699; Volunteer- Bank bearing Instrument No. HZ 6046 and re-recorded at JB 0051 (as to the specifically identified parcel containing the approximate 5.9 acre tract); Volunteer Bank bearing Instrument: No JE 0237 (as to the specifically identified parcel containing the approximate 5.9 acre tract) and Peoples Bank bearing instrument No. JF 6236, all in the said Register's Office.

. . . .

-15-

G. Any and all other matters, issues, commitments or undertakings, whether known or unknown, which may have been entered into on behalf of SWH, and which may not otherwise be particularly described herein, but for which SWH agrees to be solely liable for, and to release and forever discharge any claim asserted against Weinstein, and to indemnify and hold Weinstein harmless thereof.

. . . .

7. The parties, hereby acknowledge and understand that notwithstanding the conveyance of the property, and the hold harmless and indemnification provisions contained herein, neither of the Lenders or Lienholders are joining in this Agreement and that, none of the parties who may be financially responsible to any of the Lienholders are released from the primary liability thereon, but, pursuant to the terms of this Agreement, each of the parties hereto have agreed on the indemnification and hold harmless provisions set forth hereunder in the event of any adverse action by any Lender or Lienholder against the party intended to be released from said liability hereby. . . .

. . . .

9. Anything herein or otherwise to the contrary notwithstanding, it is the express intent of the parties hereto, that upon the execution of this document, and the execution of the associated documents being executed simultaneously herewith, including the Deed of conveyance from SWH to RCO, etc., that Weinstein shall have no liability or financial responsibility for any debt, liability, indebtedness or claim incurred by SWH arising out of any business operation of SWH, including, but not
limited to, the development of the Raleigh Commons property and its associated activities and that SWH and its Members shall indemnify and hold Weinstein harmless from any and all such costs and liabilities as more particularly described hereinabove.

After thoroughly examining the language of the Indemnity Provisions, it is abundantly clear that the intent of the parties was to indemnify Dr. Weinstein from any and all indebtedness, claims, demands, costs, expenses, damages, and liabilities associated with SWH. In fact, the Note at issue is explicitly identified as one of the liabilities of SWH for which Dr. Weinstein was entitled to indemnification. The parties further agreed that Dr.

Weinstein's right to indemnity includes "the reimbursement of any and all costs and expenses incurred in defending any and all said action, including reasonable attorneys fees and Court costs associated with, or in any manner arising out of any of the activities, enterprises or operations of SWH . . . ." Moreover, SWH and its individual members, Dr. Himmelstein, Dr. Slade, Mr. McGill, Mr. Scott, and Mr. Tello, agreed to be jointly and severally liable for the Indemnity Provisions. In light of these findings, we turn to the issues presented for our review.

## A. Dr. Himmelstein's Affirmative Defenses

Dr. Himmelstein argues that the trial court erred by granting Dr. Weinstein's motion for summary judgment on Dr. Himmelstein's affirmative defenses. Dr. Himmelstein asserted the following affirmative defenses to Dr. Weinstein's indemnification claim: (1) payment; (2) novation; (3) waiver; (4) estoppel; (5) unclean hands; and (6) offset and contribution. We shall address each in turn.

Dr. Himmelstein argues that Dr. Weinstein is not entitled to recover on his claim for indemnification because he already received payment from RC Office. Upon thorough review of the record, however, we are unable to find, and Dr. Himmelstein has failed to cite, any proof that Dr. Weinstein actually received payment to compensate him for purchasing the Note. Therefore, we find that Dr. Himmelstein's payment argument is without merit. Similarly, we find that Dr. Himmelstein's novation argument is without merit. A novation constitutes the substitution of one contract for another, and all parties to the original contract must assent to the substitution. *See Bank of Crockett v. Cullipher*, 752 S.W.2d 84, 89 (Tenn. Ct. App. 1988); *Blaylock v. Stephens*, 36 Tenn. App. 464, 467, 258 S.W.2d 779, 781 (1953). It is undisputed, however, that Dr. Weinstein unilaterally purchased the Note from Raleigh Commons without the assent of any of the other obligors on the Note. Therefore, we affirm the trial court's grant of summary judgment in favor of Dr. Weinstein regarding Dr. Himmelstein's payment and novation defenses.

Dr. Himmelstein further argues that Dr. Weinstein waived his right to pursue a claim for indemnification because he first sought to recover for breach of the Note. To accept this argument, however, would completely eviscerate the purpose of a party's right to plead alternative or inconsistent theories of relief. *See* Tenn. R. Civ. P. 8.05(2).[4] Thus, we find

_____

[4]Rule 8.05(2) of the Tennessee Rules of Civil Procedure provides:

A party may set forth two or more statements of a claim or defense alternatively or hypothetically. When two or more statements are made in the alternative and one of them

(continued...)

-17-

that this argument is without merit. Dr. Himmelstein also argues that Dr. Weinstein's indemnification claim is barred by the doctrine of estoppel. This argument, however, is based on the deposition testimony of the accountant for RC Office that the trial court determined was inadmissible because the testimony was not based on firsthand knowledge. Specifically, during his deposition, the accountant of RC Office speculated as to the origin of a bookkeeping entry indicating an obligation of RC Office to Dr. Weinstein for the amount he paid for the Note. The trial court found that the accountant's statement was not based on personal knowledge or independent recollection and therefore did not consider it in ruling on Dr. Weinstein's motion for summary judgment. *See* Tenn. R. Evid. 602 ("A witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter."); *see also* Tenn. R. Civ. P. 56.06 (requiring that, in the context of summary judgment, "[s]upporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein."). We review a trial court's decision to admit or exclude evidence for an abuse of discretion. *Biscan v. Brown*, 160 S.W.3d 462, 468 (Tenn. 2005) (citing *Mercer v. Vanderbilt Univ., Inc.*, 134 S.W.3d 121, 131 (Tenn. 2004)). Finding no abuse of discretion in the trial court's decision on this evidentiary matter, we find that this argument is without merit. Accordingly, we affirm the trial court's grant of summary judgment in favor of Dr. Weinstein regarding Dr. Himmelstein's waiver and estoppel defenses.

Next, Dr. Himmelstein argues that Dr. Weinstein's indemnification claim was barred by the doctrine of unclean hands. In essence, Dr. Himmelstein argues that, in 2006, Dr. Weinstein secretly charged RC Office with the obligation to pay himself for the amounts he paid to Raleigh Commons for the Note, and therefore he should not be able to profit from this deceitful conduct. As we explained in *Coleman Management, Inc. v. Meyer*, 304 S.W.3d 340 (Tenn. Ct. App. 2009):

> [F]or the unclean hands doctrine to apply, the inequitable or immoral conduct "must relate to the particular transaction which is the subject of the litigation." *Chappell v. Dawson*, 202 Tenn. 672, 308 S.W.2d 420, 421 (1957). The Supreme Court has stated:
>
> > The controlling principle is thus stated in Gibson's Suits in Chancery [citation omitted]: "But the operation of the maxim is

---

[4](...continued)
if made independently would be sufficient, the pleading is not made insufficient by the insufficiency of one or more of the alternative statements. A party may also state as many separate claims or defenses as he or she has, regardless of consistency.

> confined to misconduct connected with the particular matter in litigation; and does not extend to any misconduct, however gross, which is unconnected therewith, and with which the defendant is not concerned."

*Id.* at 353 (quoting *Chappell*, 308 S.W.2d at 421). In this case, the Note and the Indemnity Provisions are the subject of this litigation for which Dr. Weinstein seeks recovery. Both of these documents were executed by the parties years before the alleged misconduct took place. Moreover, the misconduct complained of by Dr. Himmelstein bears no relation to the formation of these agreements which are the source of his potential liability to Dr. Weinstein. As a result, we affirm the trial court's grant of summary judgment in favor of Dr. Weinstein regarding Dr. Himmelstein's unclean hands defense.

Lastly, Dr. Himmelstein argues that he is entitled to an offset of any liability based upon the principles of contribution. However, Dr. Himmelstein failed to cite any applicable law or form any legal argument in his brief to support this contention. As we recently stated in *Forbess v. Forbess*, 370 S.W.3d 347 (Tenn. Ct. App. 2011):

> This court has repeatedly held that a party's failure to cite authority for its arguments or to argue the issues in the body of its brief constitute a waiver on appeal. *Newcomb v. Kohler Co.*, 222 S.W.3d 368, 401 (Tenn. Ct. App. 2006) (failure "to cite to any authority or to construct an argument regarding [a] position on appeal" constitutes a waiver of the issue); *Bean v. Bean*, 40 S.W.3d 52, 55–56 (Tenn. Ct. App. 2000) ("Courts have routinely held that the failure to make appropriate references to the record and to cite relevant authority in the argument section of the brief as required by Rule 27(a)(7) constitutes a waiver of the issue.").

*Id.* at 355; *see also Hawkins v. Hart*, 86 S.W.3d 522, 531 (Tenn. Ct. App. 2001) ("Where a party makes no legal argument and cites no authority in support of a position, such issue is deemed to be waived and will not be considered on appeal.") (citing *Branum v. Akins*, 978 S.W.2d 554, 557 n.2 (Tenn. Ct. App. 1998); *see also Morris v. Snodgrass*, 886 S.W.2d 761 (Tenn. Ct. App. 1994); *Maryville Housing Authority v. Ramsey*, 484 S.W.2d 73 (Tenn. Ct. App. 1972)). Moreover, after examining the single paragraph argument put forth by Dr. Himmelstein in support of this position, we are unable to derive the purpose of this argument. Any issue involving contribution does not negate Dr. Himmelstein's liability to Dr. Weinstein. Furthermore, in its final judgment, the trial court clearly determined the proportionate liability of the parties. Therefore, we find no merit in this argument. We affirm the trial court's grant of summary judgment in favor of Dr. Weinstein regarding Dr. Himmelstein's offset and contribution defense.

## B. Dr. Weinstein's Indemnification Claim

Dr. Himmelstein argues that the trial court erred by granting summary judgment in favor of Dr. Weinstein on his indemnification claim for two reasons. First, Dr. Himmelstein argues that Dr. Weinstein's purchase of the Note was voluntary because he was never found to be liable to Raleigh Commons. Second, Dr. Himmelstein argues that Dr. Weinstein paid an unreasonable amount of attorney's fees when he purchased the Note from Raleigh Commons.

"The concept of indemnity involves the shifting of the entire burden of liability from one person to another. The right of indemnity refers to a party's right to be protected from or to be compensated for a loss resulting from a legal action taken against the party by another." *Long v. McAllister-Long*, 221 S.W.3d 1, 10 (Tenn. Ct. App. 2006). As discussed by this Court in *Stiver Marketing, Inc. v. Performance Business Forms, Inc.*, No. 01-A-019108CH00276, 1991 WL 254564 (Tenn. Ct. App. Dec. 4, 1991):

> Indemnity against losses does not cover losses for which the indemnitee is not liable to a third person, and which he improperly pays. But a person legally liable for damages who is entitled to indemnity may settle the claim and recover over against the indemnitor, even though he has not been compelled by judgment to pay the loss. The fact of voluntary payment does not negative the right to indemnity, since a person confronted with an obligation that he cannot legally resist is not obligated to wait to be sued and to lose a reasonable opportunity for compromise. Such recovery is subject to proof of liability and the reasonableness of the amount of the settlement. Thus, the indemnitee may be required to establish his case against the indemnitor in the same way that the claimant against him would have been obligated to do, namely, by a preponderance of the evidence. A mere showing by a party seeking indemnity that there was a reasonable possibility that it might have been held liable if it had not settled the injured party's suit is not sufficient to recover indemnity; actual legal liability must be shown.

*Id.* at *4 (citing 41 Am. Jur.2d Indemnity, § 33, p. 723). Although "[g]enerally, the right to sue for indemnity for damages resulting from the negligence, misfeasance, or malfeasance of another accrues only when payment has been legally made by the indemnitee," the loss may also take the form of "payment, settlement, or through the injured party's obtaining an enforceable judgment." *Id.* at *4-5 (citing 42 C.J.S. Indemnity, § 44 p. 137, 138).

In the case at bar, Dr. Weinstein suffered a loss when, in order to avoid having a judgment entered against him, he paid Raleigh Commons for the purchase of the Note. It is

undeniable that the liability of Dr. Weinstein was triggered once SWH and its individual members defaulted on their obligation to pay the Note. Therefore, it is disingenuous for Dr. Himmelstein to argue that Dr. Weinstein's purchase of the Note was voluntary. Instead, Dr. Weinstein's purchase of the Note resulted from the indefensible position in which he was placed following the inaction of SWH and its individual members. Accordingly, Dr. Himmelstein's argument that Dr. Weinstein voluntarily purchased the Note is without merit.

Although Dr. Weinstein undoubtedly has the right to indemnification for his purchase of the Note pursuant to the Indemnity Provisions, the issue remains whether the amount he paid to Raleigh Commons was reasonable. Reasonableness is determined in the context of the specific factual situation involved. Further, as a general rule, the determination of reasonableness is a question of fact for the jury. *See Nat'l Mortg. Co. v. Washington*, 744 S.W.2d 574, 580 (Tenn. Ct. App. 1987) (citing *Smith v. Sloan*, 225 S .W.2d 539 (Tenn. 1949); *Hathaway v. Middle Tennessee Anesthesiology, P.C.*, 724 S.W.2d 355 (Tenn. Ct. App. 1986)).

> This is not to say that summary judgment is never available when the question of good faith or reasonableness is a determinative issue. However, summary judgment is warranted only when, taking the evidence of the non-moving party as true, viewing that evidence in the light most favorable to the non-moving party, and drawing all reasonable inference therefrom in favor of the non-movant, there is no genuine issue of material fact. If there is any doubt whether a genuine issue exists, summary judgment must be denied.

*Gulf Ins. Co. v. Construx, Inc.*, No. M1999-02803-COA-R3-CV, 2001 WL 840240, at *19 (Tenn. Ct. App. July 26, 2001).

Dr. Himmelstein argues that Dr. Weinstein was not entitled to summary judgment on his indemnification claim because he paid an unreasonable amount of attorney's fees to Raleigh Commons when he purchased the Note. Specifically, of the $304,218.00 amount that Dr. Weinstein paid for the Note, $52,798.38 of that amount represented the attorney's fees of Raleigh Commons. Dr. Himmelstein points to the transcript of Dr. Weinstein's deposition as evidence that a material factual dispute exists such that summary judgment was inappropriate. When questioned during his deposition about the amount of attorney's fees he paid Raleigh Commons for the Note, Dr. Weinstein stated as follows:

> Q.    Were there any negotiations with the -- with Raleigh Commons or its representatives about the ultimate amount of the payment that you would make?

A.    I believe there was.

Q.    Are you familiar with what those negotiations were about or --

A.    When the amount was given to me, I was shocked at the total, and I found out that there was a 33 percent fee for the attorney, which I thought was ridiculous since it didn't make any sense that someone that probably spent two or three hours of work would get that much money.

Q.    And that would be Mr. Douglas?

A.    Correct.

Q.    The attorney for Raleigh Commons?

A.    Correct.

Q.    And what happened when -- in regard to that 33 percent figure?

A.    I was concerned because Dr. Himmelstein and Dr. Slade were going to ultimately have to pay me for what I was paying, and I thought that was ridiculous. I spoke to Mr. Feldbaum and told him to call Mr. Douglas and mention to him that I'm ready to write a check and see if he could make an accommodation.

Q.    So Mr. Feldbaum was assisting you at that time?

A.    Correct.

Q.    Was Mr. Mitchell still assisting you as well at that time?

A.    I believe Mr. Mitchell was. I don't know if it was Mr. Mitchell called or Mr. Feldbaum that called.

      Mr. Feldbaum is an acquaintance of both Mr. Mitchell and Mr. Douglas, and they were speaking, and I don't know who made the phone call. Someone made the phone call and mentioned that if I paid it now, they would lower his fee to 23 percent or 22 percent. I can't remember the exact amount, but it was less. I think it was 33 to 22, but I'm not certain.

Notwithstanding Dr. Weinstein's alleged efforts to lower the amount of the attorney's fees, Dr. Himmelstein stresses that Dr. Weinstein's statement that "it didn't make any sense that someone that probably spent two or three hours of work would get that much money" demonstrates that a reasonable jury could legitimately resolve this factual dispute in favor of either party.

We note that there is nothing in the record to support the amount of work or the amount of hours spent by counsel for Raleigh Commons. Instead, as emphasized by Dr. Himmelstein, the record does contain the affidavit of one of Dr. Weinstein's attorneys that explains the amount of work and amounts charged for services provided at the outset of this litigation. According to the affidavit, from February 2006 to January 2007, counsel for Dr. Weinstein spent approximately twenty five (25) hours working on this matter and charged Dr. Weinstein a total fee of $4,582.40. On the other hand, counsel for Raleigh Commons received $52,798.38 for its services rendered from the time Raleigh Commons filed its complaint on January 6, 2006, until Dr. Weinstein purchased the Note on September 28, 2006. Viewing this evidence in the light most favorable to Dr. Himmelstein, and drawing all reasonable inferences in his favor, there is clearly a material factual dispute as to the reasonableness of the amount of attorney's fees Dr. Weinstein paid to Raleigh Commons. Accordingly, we reverse the trial court's grant of summary judgment in favor of Dr. Weinstein on his indemnification claim.

## C. Indemnification for Attorney's Fees

Next, we shall address whether the trial court erred by awarding attorney's fees and costs to Dr. Weinstein pursuant to the Indemnity Provisions for legal services performed after Dr. Weinstein purchased the Note. Dr Himmelstein argues that the Indemnity Provisions pertain only to Dr. Weinstein's attorney's fees and costs incurred in defending a claim asserted against him, not to his attorney's fees and costs incurred in prosecuting his own claim for indemnification. Because Dr. Weinstein was no longer defending a claim after he purchased the Note from Raleigh Commons, Dr. Himmelstein argues that Dr. Weinstein was not entitled to any attorney's fees or costs that he incurred in seeking to enforce the Indemnity Provisions. On the other hand, Dr. Weinstein argues that the Indemnity Provisions should be broadly construed to allow for his recovery of attorney's fees and costs incurred in enforcing the Indemnity Provisions. Alternatively, Dr. Weinstein argues that he is entitled to an award of attorney's fees and costs incurred in enforcing the Indemnity Provisions because this litigation arose out of the activities and operations of SWH in failing to pay the Note.

Recently, in *Triangle American Homes v. Harrison*, No. E2009-01954-COA-R3CV, 2011 WL 4863713 (Tenn. Ct. App. Oct. 13, 2011), this Court addressed a similar issue and

explained that:

> Tennessee follows the American Rule which provides that "litigants pay their own attorney's fees absent a statute or an agreement providing otherwise." *State v. Brown & Williamson Tobacco Corp.*, 18 S.W.3d 186, 194 (Tenn. 2000); *accord Taylor v. Fezell*, 158 S.W.3d 352, 359 (Tenn. 2005). "Under the American [R]ule, a party in a civil action may recover attorney fees only if: (1) a contractual or statutory provision creates a right to recover attorney fees; or (2) some other recognized exception to the American [R]ule applies, allowing for recovery of such fees in a particular case." *Cracker Barrel Old Country Store, Inc. v. Epperson*, 284 S.W.3d 303, 308 (Tenn. 2009) (citing *Taylor*, 158 S.W.3d at 359; *John Kohl & Co. v. Dearborn & Ewing*, 977 S.W.2d 528, 534 (Tenn. 1998)). "[A]s a general principle, the American [R]ule reflects the idea that public policy is best served by litigants bearing their own legal fees regardless of the outcome of the case." *House v. Estate of Edmondson*, 245 S.W.3d 372, 377 (Tenn. 2008).

> As relevant to this case, attorney fees "are recoverable under an express indemnity contract if the language of the agreement is broad enough to cover such expenditures." *Pullman Standard, Inc. v. Abex Corp.*, 693 S.W.2d 336, 338 (Tenn. 1985). However, recovery under an implied indemnity theory also includes attorney fees and "other litigation costs which have been incurred by the indemnitee in litigation with a third party." *Id.* at 338. This case involved an express indemnity contract that included an attorney fees provision. Consequently, we must determine whether the provision in the contract was broad enough to include the trial court's award of attorney fees. The cardinal rule of contract interpretation is that the court "must attempt to ascertain and give effect to the intent of the parties." *Christenberry v. Tipton*, 160 S.W.3d 487, 494 (Tenn. 2005). In attempting to ascertain the intent of the parties, the court must examine the language of the contract, giving each word its usual, natural, and ordinary meaning. *See Wilson v. Moore*, 929 S.W.2d 367, 373 (Tenn. Ct. App. 1996). The "court's initial task in construing a contract is to determine whether the language of the contract is ambiguous." *Planters Gin Co. v. Fed. Compress & Warehouse Co.*, 78 S.W.3d 885, 889–90 (Tenn. 2002). Where the language of a contract is clear and unambiguous, its literal meaning controls the outcome of the dispute. *Id.* at 890.

*Id.* at \*10-11. Moreover, as a general rule, attorney's fees are not recoverable in a suit between parties to a contract to simply enforce the contract terms, unless the contract expressly allows for such recovery. *See Holcomb v. Cagle*, 277 S.W.3d 393 (Tenn. Ct. App.

2008) (holding that the contractual language to hold plaintiffs harmless from "any cost, loss, damage, or expense arising solely out of any failure of the Tenant to comply with any of the requirements or provisions of th[e] Ground Lease" did not explicitly provide for the recovery of attorney fees incurred in enforcing its provisions).

This case involves an express indemnity agreement which includes a provision for recovery of attorney's fees and costs. With that in mind, we must determine whether the Indemnity Provisions are broad enough to allow for the recovery of attorney's fees and costs incurred by Dr. Weinstein in seeking to enforce its terms.

> The provision for attorney's fees provides, in pertinent part, as follows:
> SWH and its individual Members shall be jointly and severally liable to indemnify and hold Weinstein, the withdrawing Member from SWH, harmless from any and all said liability or indebtedness, including any and all indebtedness, claims, demands, costs, expenses, damages or liabilities which might be associated therewith, including but not limited to *the reimbursement of any and all costs and expenses incurred in defending any and all said action including reasonable attorneys fees and Court costs* associated with, or in any manner arising out of any of the activities, enterprises or operations of SWH, for which Weinstein will no longer be a part . . . .
>
> . . . .
>
> [P]ursuant to the terms of this Agreement, each of the parties hereto have agreed on the indemnification and hold harmless provisions set forth hereunder *in the event of any adverse action by any Lender or Lienholder against the party intended to be released from said liability hereby.*

(Emphasis added). The relevant language regarding recovery of attorney's fees and costs in the Indemnity Provisions is unambiguous. The agreement clearly states that Dr. Weinstein is entitled to the reimbursement of any and all costs, including attorney's fees, incurred in *defending* any action arising out of the activities and operations of SWH. Furthermore, the language provides that SWH and its individual members agreed to indemnify Dr. Weinstein "in the event of any adverse action by any Lender or Lienholder." Giving each word its natural and ordinary meaning, we conclude that the Indemnity Provisions only allow for the recovery of attorney's fees and costs incurred in defending a suit by a third party. To conclude otherwise would require us to ignore the clear meaning of the language in the Indemnity Provisions. Accordingly, we reverse the portion of the trial court's order awarding Dr. Weinstein attorney's fees and costs incurred in enforcing the Indemnity Provisions.

### D.  Dr. Himmelstein's Cross-Claims

### 1.  Breach of the Operating Agreement

Dr. Himmelstein argues that the trial court erred in granting summary judgment in favor of Dr. Weinstein on Dr. Himmelstein's cross-claim for breach of the RC Office Operating Agreement.  The RC Office Operating Agreement provides, in pertinent part, as follows:

### XVI. Standard of Care and Members' Limitation of Liability

The Members shall discharge their duties on behalf of the LLC in good faith, with the care of an ordinary prudent person in a like position would exercise under similar circumstances and in a manner reasonably believed to be in the best interests of the LLC.

A member shall not be liable to the LLC or to any other member for any act, omission or error committed by the member while acting on behalf of the LLC in accordance with the standards of conduct, if any, established in the Tennessee Limited Liability Company Act.

No Member shall be liable to the LLC or the Members for money damages for any action taken, or any failure to take any action, as a Member, except for: (a) the amount of a financial benefit received by a Member to which he is not entitled, (b) an intentional infliction of harm on the LLC or the Members, (c) an intentional violation of criminal law, or (d) a violation of the Tennessee Limited Liability Company Act.

According to Dr. Himmelstein, the following are examples of Dr. Weinstein's alleged breach of the Operating Agreement: (1) Dr. Weinstein failed to raise rent on his medical practice during its occupation of a portion of the office building; (2) Dr. Weinstein failed to maintain a lease with his medical practice for the portion of the office building that it occupied; and (3) Dr. Weinstein withheld information about RC Office from Dr. Himmelstein.[5]

---

[5]Dr. Himmelstein also argues, for the first time on appeal, that Dr. Weinstein breached the Operating Agreement: (1) by failing to pay property taxes on behalf of RC Office; (2) by making statements that the rental income generated by RC Office would be sufficient to cover its expenses; and (3) by causing RC Office to incur a liability to Dr. Weinstein by directing an accounting entry to be made on the books of RC Office.  It is well established, however, that issues not raised at trial will not be considered for the first time on appeal.  *See Lawrence v. Stanford*, 655 S.W.2d 927, 929 (Tenn. 1983).  Accordingly, these arguments are

(continued...)

Upon thorough examination of the record, we find no error in the trial court's determination. It is undisputed that Dr. Himmelstein did not make an effort to review the books and records of RC Office. It is also undisputed that Dr. Weinstein provided Dr. Himmelstein with every document in his possession relating to RC Office. Moreover, it is undisputed that Dr. Weinstein's medical practice paid rent at or above market rates during the time that it occupied space in the office building, including the time when his medical practice occupied the space as a holdover tenant. Furthermore, Dr. Himmelstein failed to identify any harm to RC Office, and failed to allege facts or present evidence to support his arguments that Dr. Weinstein's conduct amounted to a breach of the Operating Agreement. Therefore, we affirm the trial court's grant of summary judgment in favor of Dr. Weinstein on Dr. Himmelstein's cross-claim for breach of the Operating Agreement.

### 2. Breach of Fiduciary Duty

Dr. Himmelstein next argues that the trial court erred in granting Dr. Weinstein's motion to dismiss his cross-claim for breach of fiduciary duty. As this Court recently stated in *Stonebridge Life Ins. Co. v. Horne*, No. W2012-00515-COA-R3-CV, 2012 WL 5870386 (Tenn. Ct. App. Nov. 21, 2012) (*no perm. app. filed*):

> It is well settled that a motion to dismiss a complaint for failure to state a claim upon which relief can be granted tests the legal sufficiency of the complaint. It admits the truth of all relevant and material allegations, but asserts that such allegations do not constitute a cause of action as a matter of law. *See Riggs v. Burson*, 941 S.W.2d 44 (Tenn.1997). When considering a motion to dismiss for failure to state a claim upon which relief can be granted, courts are limited to an examination of the complaint alone. *See Wolcotts Fin. Serv., Inc. v. McReynolds*, 807 S.W.2d 708 (Tenn.Ct.App.1990). The basis for the motion is that the allegations in the complaint, when considered alone and taken as true, are insufficient to state a claim as a matter of law. *See Cornpropst v. Sloan*, 528 S.W.2d 188 (Tenn.1975). In considering such a motion, the court should construe the complaint liberally in favor of the plaintiff, taking all the allegations of fact therein as true. *See Cook ex rel. Uithoven v. Spinnaker's of Rivergate, Inc.*, 878 S.W.2d 934 (Tenn.1994).

*Id.* at *10.

In its order granting Dr. Weinstein's motion to dismiss, the trial court concluded that

_____

[5](...continued)
deemed waived.

Dr. Himmelstein's cross-claim for breach of fiduciary duty "fails to state a claim upon which relief can be granted because Tenn. Code Ann. § 48-240-102 defines the fiduciary duty of members of a member-managed LLC as one owing to the LLC, not to individual members." We agree. Tennessee Code Annotated section 48-240-102 provides, in pertinent part, as follows:

> (a) **Fiduciary Duty of Members of Member-Managed LLC**. Except as provided in the articles or operating agreement, every member of a member-managed LLC must account to the LLC for any benefit, and hold as trustee for it any profits derived by the member without the consent of the other members from any transaction connected with the formation, conduct, or liquidation of the LLC or from any use by the member of its property including, but not limited to, confidential or proprietary information of the LLC or other matters entrusted to the member as a result of such person's status as a member.

Tenn. Code Ann. § 48-240-102(a) (2002). Moreover, it is well established that "[t]he statute in question defines the fiduciary duty of members of a member-managed LLC as one owing to the LLC, not to individual members." *McGee v. Best*, 106 S.W.3d 48, 64 (Tenn. Ct. App. 2002). Accordingly, we affirm the trial court's dismissal of Dr. Himmelstein's cross-claim for breach of fiduciary duty.[6]

### 3. Unjust Enrichment

Dr. Himmelstein argues that the trial court erred in granting Dr. Weinstein's motion to dismiss his cross-claim for unjust enrichment. In essence, Dr. Himmelstein argues that Dr. Weinstein was unjustly enriched as a result of the same conduct that he claims amounted to Dr. Weinstein's breach of the RC Office Operating Agreement. The trial court granted Dr. Weinstein's motion to dismiss Dr. Himmelstein's unjust enrichment claim because an express agreement– the RC Office Operating Agreement– governed the conduct for which he sought recovery.

Unjust enrichment, quasi contract, quantum meruit, and contracts implied at law all describe "that class of implied obligations where, on the basis of justice and equity, the law will impose a contractual relationship between parties, regardless of their assent thereto."

---

[6]We note that Dr. Himmelstein also argues that Dr. Weinstein breached his common law fiduciary duty. However, Dr. Himmelstein failed to cite, and we are unable to find, any applicable case law permitting a claim for breach of common law fiduciary duty separate and apart from the statutory fiduciary duty provided at Tenn. Code Ann. § 48-240-102(a).

*Paschall's, Inc. v. Dozier*, 219 Tenn. 45, 407 S.W.2d 150, 154 (Tenn.1966). "It is a general rule of law that quantum meruit relief, based upon an implied contract or quasi-contract, will not be imposed in circumstances where an express contract or agreement exists." *Arena v. Schulman, LeRoy & Bennett*, 233 S.W.3d 809, 815 (Tenn. Ct. App. 2006) (citing *Scandlyn v. McDill Columbus Corp.*, 895 S.W.2d 342, 349 (Tenn. Ct. App. 1994); *Fletcher Realty, Inc. v. Hayslope Properties*, 712 S.W.2d 478, 481–482 (Tenn. Ct. App. 1986)). As correctly stated by the trial court, unjust enrichment does not apply in this case because the Operating Agreement governed the conduct for which Dr. Himmelstein sought relief. Therefore, we affirm the trial court's dismissal of Dr. Himmelstein's cross-claim for unjust enrichment.

### E. Dr. Slade

Upon review of the record, it appears that the trial court did in fact assess damages against Dr. Slade in his absence. In light of the severity of this issue, we vacate the portion of the trial court's order assessing damages against Dr. Slade. On remand, the trial court shall conduct a hearing to determine the extent of each party's liability. All other issues in this cause are pretermitted.

### V. Conclusion

For the foregoing reasons, we affirm in part, reverse in part, vacate in part, and remand for further proceedings consistent with this Opinion. We decline Dr. Weinstein's request for attorney's fees and costs incurred on appeal. Costs of this appeal are taxed equally to the Appellant, Stevan Himmelstein, M.D., and his surety, and the Appellees, Joseph Weinstein, M.D., and Whitney Slade, M.D., for all of which execution may issue if necessary.

_____
DAVID R. FARMER, JUDGE