## Gerry G. KINSLER

v.

## BERKLINE, LLC.

Supreme Court of Tennessee,
at Knoxville.

Sept. 4, 2009 Session.

Sept. 20, 2010.

Kelly A. Campbell, Morristown, Tennessee, for the appellant, Berkline, LLC.

Mark S. Stapleton, Rogersville, Tennessee, and William Lewis Jenkins, Jr., Dyersburg, Tennessee, for the appellee, Gerry G. Kinsler.

Justin S. Gilbert, Jackson, Tennessee; Donald A. Donati and William B. Ryan, Memphis Tennessee; and Wade B. Cowan, Nashville, Tennessee, for the amicus curiae, Tennessee Employment Lawyers Association.

## OPINION

JANICE M. HOLDER, C.J., delivered the opinion of the Court, in which GARY R. WADE, J. joined. CORNELIA A. CLARK, J., filed a separate opinion concurring in part and concurring in the judgment, in which WILLIAM C. KOCH, JR., J., joined. SHARON G. LEE, J., not participating.

The employer discharged the employee three days after he rejected an offer to settle his workers' compensation claim, and the employee brought a retaliatory discharge action against the employer. The trial court granted the employer summary judgment, which the Court of Appeals reversed. We hold that genuine issues of material fact preclude summary judgment. We therefore affirm the judgment of the Court of Appeals.

### Facts and Procedural History

Defendant Berkline, LLC (Berkline) employed Gerry G. Kinsler as a "maintenance multicraftsman." His duties as a multicraftsman included servicing and repairing machines and equipment in Berkline's furniture manufacturing plant and maintaining the plant, building, and grounds. A job description established by Berkline in 1992 for multicraftsmen states that one physical requirement is the occasional lifting of up to seventy-five pounds.

On June 9, 2005, Mr. Kinsler was injured when another multicraftsman dropped a motor that he and Mr. Kinsler were lifting. The injury required medical treatment, during which time Berkline placed Mr. Kinsler on modified/restricted duty repairing air tools in the maintenance shop. Mr. Kinsler reached maximum medical improvement in September 2005. Relying on a "functional capacity evaluation study" conducted on September 25, 2005, Mr. Kinsler's treating physician imposed a permanent lifting restriction of no more than thirty pounds. Berkline returned Mr. Kinsler to the maintenance department at the same hourly rate of pay he earned prior to his injury but with limited duties, including repairing air tools, cleaning the shop, and answering the phone. These tasks previously had been performed by all multicraftsmen and not assigned to a particular employee.

Mr. Kinsler repeatedly told his supervisors that he wanted to resume his pre-injury responsibilities. Mr. Kinsler asserted that he could perform the essential duties of a multicraftsman while remaining within his lifting restriction because multicraftsmen helped each other and used equipment when heavy lifting was required. Berkline commissioned a job site

evaluation to determine his ability to return to his pre-injury job. The evaluation was conducted by Andrew Smith, a physical therapist, on December 21, 2005. Mr. Kinsler, his supervisor, and Berkline's workers' compensation administrator provided Mr. Smith with a description of the maintenance multicraftsman position. Mr. Smith then weighed parts and equipment that Mr. Kinsler "may be required" to lift, carry, or handle if he resumed his pre-injury job.

Mr. Smith delivered a job site evaluation report to Berkline on January 5, 2006. It stated, "There are situations that occur throughout the workday that require[ ] the lifting, carrying, or positioning of materials/equipment/parts that could weigh over fifty pounds." Mr. Smith compared this information to Mr. Kinsler's performance on the functional capacity evaluation study and concluded that "Mr. Kinsler presently does not have the functional capacities or capabilities to perform all of the essential duties or meet all of the physical demand requirements of a Maintenance Multicraftsman."

Contemporaneous with Mr. Kinsler's request to resume his pre-injury responsibilities, Berkline's workers' compensation administrator discussed with Mr. Kinsler settling any workers' compensation claims arising from the June 9, 2005 injury. Mr. Kinsler agreed to a settlement amount, and the administrator scheduled a settlement approval hearing on January 9, 2006. At that meeting, however, a Department of Labor representative suggested that Mr. Kinsler complete a scheduled medical evaluation of his shoulder prior to settling his case, and Mr. Kinsler rejected Berkline's settlement offer.

At some point in time between January 9 and 12, 2006, Mr. Kinsler's supervisors reviewed Mr. Smith's job site evaluation report. They met with Mr. Kinsler concerning the report on January 12, 2006, and Berkline discharged Mr. Kinsler during that meeting.

Mr. Kinsler filed a retaliatory discharge claim alleging that Berkline terminated his employment because he refused its offer to settle his workers' compensation claim. Berkline moved for summary judgment. It alleged that Mr. Kinsler could not prove that his rejection of Berkline's settlement offer was a substantial factor in its motivation to terminate Mr. Kinsler's employment. Berkline alleged that it discharged Mr. Kinsler for the legitimate reason that Mr. Kinsler could not perform all of the responsibilities of a maintenance multicraftsman with his lifting restriction.

The trial court granted summary judgment. The Court of Appeals reversed, holding that there were genuine issues of material fact regarding Berkline's actual motivation for discharging Mr. Kinsler. We granted Berkline's application for permission to appeal to determine whether summary judgment is appropriate in this case.

### Analysis

■■■ The granting or denying of a motion for summary judgment is a matter of law, and our standard of review is de novo with no presumption of correctness. *Blair v. W. Town Mall*, 130 S.W.3d 761, 763 (Tenn.2004). Summary judgment should be rendered "forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Tenn. R. Civ. P. 56.04. As the party moving for summary judgment, Berkline has the burden of showing that there is no genuine issue of material fact as to Mr. Kinsler's common law retaliatory discharge claim. *See Mar-*

*tin v. Norfolk S. Ry. Co.*, 271 S.W.3d 76, 83 (Tenn.2008).

■ For common law retaliatory discharge cases such as the one before us, the employee has the burden of proving the four elements of the claim:

(1) that an employment-at-will relationship existed;

(2) that the employee was discharged;

(3) that the reason for the discharge was that the employee attempted to exercise a statutory or constitutional right, or for any other reason which violates a clear public policy evidenced by an unambiguous constitutional, statutory, or regulatory provision; and

(4) that a substantial factor in the employer's decision to discharge the employee was the employee's exercise of protected rights or compliance with clear public policy.

*Gossett v. Tractor Supply Co., Inc.*, 320 S.W.3d 777, 781 (Tenn.2010) (citing *Crews v. Buckman Labs. Int'l, Inc.*, 78 S.W.3d 852, 862 (Tenn.2002)).

■ To show that there is no genuine issue of material fact, Berkline must either produce or identify evidence "that affirmatively negates an essential element of the nonmoving party's claim or shows that the nonmoving party cannot prove an essential element of the claim at trial." *See Mills v. CSX Transp., Inc.*, 300 S.W.3d 627, 631 (Tenn.2009). Berkline challenges Mr. Kinsler's ability to establish the causation element of his claim. At trial, Mr. Kinsler must show that his rejection of Berkline's settlement offer was a substantial factor in Berkline's decision to discharge him. *See Crews*, 78 S.W.3d at 862. Mr. Kinsler's rejection of the settlement offer would constitute a substantial factor in Berkline's decision if the rejection was "an important or significant motivating factor for the dis-

charge." *Anderson v. Standard Register Co.*, 857 S.W.2d 555, 558 (Tenn.1993).

Berkline contends that Mr. Kinsler cannot establish that his rejection of the settlement offer constituted a substantial factor in Berkline's decision to discharge him. In support of its argument, Berkline has presented evidence that it discharged Mr. Kinsler solely because his permanent lifting restriction prevented him from performing the responsibilities of a maintenance multicraftsman. Berkline points to Mr. Kinsler's deposition and reports from Mr. Kinsler's treating physician to show that Mr. Kinsler has a permanent lifting restriction of no more than thirty pounds. It has produced a 1992 job description stating that one physical requirement of a maintenance multicraftsman is the lifting of up to seventy-five pounds. Berkline also has produced a job site evaluation report stating that parts and equipment Mr. Kinsler may be required to handle "could weigh over fifty pounds" and concluding that Mr. Kinsler could not perform all the responsibilities of a maintenance multicraftsman with his lifting restriction. Finally, Berkline has pointed to statements from Mr. Kinsler's deposition in which Mr. Kinsler admits that the maintenance multicraftsman position requires lifting beyond his restriction approximately five times per year.

■ As we stated in *Mills*, determining whether the evidence identified by Berkline is sufficient to satisfy its burden of production is unnecessary if Mr. Kinsler "has clearly stated a genuine issue of material fact that would preclude summary judgment." 300 S.W.3d at 634. Mr. Kinsler has identified facts in the record that call into question Berkline's proffered reason for Mr. Kinsler's discharge. *Cf. Martin*, 271 S.W.3d at 84 (stating that a party opposing summary judgment may show a genuine issue of material fact by "pointing

to evidence establishing material factual disputes" (citations omitted)). Mr. Kinsler has identified the close temporal proximity, three days, between his rejection of Berkline's settlement offer and his discharge. He points to his affidavit in which he states that he used "tow motors" or other forms of assistance when heavy lifting was required prior to his injury. Mr. Kinsler further states in his deposition that he and other multicraftsmen helped each other with heavy lifting. The record includes depositions of Berkline's workers' compensation administrator and of Mr. Kinsler's supervisor, both of whom state that maintenance multicraftsmen frequently worked together when heavy lifting was required. Mr. Kinsler's supervisor also states that the quality of Mr. Kinsler's work as a maintenance multicraftsman met the standard demanded by Berkline. Finally, a memorandum in Mr. Kinsler's employment file suggests that Berkline was aware that Mr. Kinsler had a lifting restriction of forty pounds as early as 1984.

■ To determine whether the facts identified by Mr. Kinsler create a genuine issue of material fact, we "must take the strongest legitimate view of the evidence in favor of the nonmoving party, allow all reasonable inferences in favor of that party, and discard all countervailing evidence." *Blair*, 130 S.W.3d at 768. There is no genuine issue of material fact if the undisputed facts and inferences drawn in the nonmoving party's favor "permit a reasonable person to reach only one conclusion." *Staples v. CBL & Assocs., Inc.*, 15 S.W.3d 83, 89 (Tenn.2000).

■ From our review of the record, there are genuine issues of material fact as to whether Berkline discharged Mr. Kinsler for the reasons Berkline stated or because Mr. Kinsler rejected its settlement offer. Taking the strongest legitimate view of the evidence in favor of Mr.

Kinsler, allowing all reasonable inferences in his favor, and discarding all countervailing evidence, the record shows that Berkline did not enforce the lifting restrictions for the maintenance multicraftsman position as to Mr. Kinsler until three days after he rejected its settlement offer. Based on these facts, a reasonable person could reach more than one conclusion as to whether Mr. Kinsler's rejection of the settlement offer was a substantial factor in Berkline's decision to discharge him. This genuine issue of material fact precludes summary judgment. *See Mills*, 300 S.W.3d at 635; *see also Wright v. Murray Guard, Inc.*, 455 F.3d 702, 721 (6th Cir. 2006) (Moore, J., concurring) ("Inquiries regarding what actually motivated an employer's decision are very fact intensive. . . .").

■ Because this genuine issue of material fact is easily ascertainable and dispositive of summary judgment, conducting the burden-shifting analysis described in *Hannan v. Alltel Publishing Co.*, 270 S.W.3d 1, 8–9 (Tenn.2008), is unnecessary to the disposition of this case. Nor do we need to use the framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), as the separate opinion indicates we should, to consider this retaliatory discharge case. We have held that summary judgment is permissible if and only if there is no genuine issue of material fact as to an essential element. *See Mills*, 300 S.W.3d at 634–35; *Martin*, 271 S.W.3d at 87. We have identified a genuine issue of material fact that precludes summary judgment. Further analysis therefore is unnecessary.

## Conclusion

For the reasons articulated above, we hold that summary judgment was improperly granted in Mr. Kinsler's common law retaliatory discharge action against Berk-

line. The judgment of the Court of Appeals reversing the trial court's grant of summary judgment is affirmed. Costs are assessed against the appellant, Berkline, LLC, for which execution may issue if necessary.

CORNELIA A. CLARK, J., filed a separate opinion concurring in part and concurring in the judgment, in which WILLIAM C. KOCH, JR., J., joined. SHARON G. LEE, J., not participating.

CORNELIA A. CLARK, J., concurring in part and concurring in the judgment.

I concur in the judgment affirming the decision of the Court of Appeals because genuine issues of material fact exist precluding summary judgment for the employer. I write separately to reiterate my belief, set forth in my partial concurrence and dissent in *Gossett v. Tractor Supply Co.*, 320 S.W.3d 777 (Tenn.2010), that the framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), need not be abrogated because it is compatible with the summary judgment procedures as set forth in the Tennessee Rules of Civil Procedure and *Hannan v. Alltel Publishing Co.*, 270 S.W.3d 1 (Tenn.2008). As the facts of this case illustrate, the *McDonnell Douglas* framework applied along with *Hannan* at the summary judgment phase enables an orderly evaluation of the evidence.

Pursuant to Tennessee Rule of Civil Procedure 56.04, a moving party obtains summary judgment by "show[ing] that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." As interpreted in *Hannan*, a party moving for summary judgment and "seek[ing] to shift the burden of production to the nonmoving party who bears the burden of proof at trial must either: (1) affirmatively negate an essential element of the nonmoving par-

ty's claim; or (2) show that the nonmoving party cannot prove an essential element of the claim at trial." 270 S.W.3d at 8–9. A moving party cannot merely "challenge the nonmoving party to 'put up or shut up' or . . . cast doubt on a party's ability to prove an element at trial." *Id.* at 8.

Less than three years ago, we explained how the *McDonnell Douglas* framework operates at the summary judgment stage in an opinion involving a retaliation case brought pursuant to the Tennessee Human Rights Act ("THRA"):

> After an employee establishes a prima facie case of retaliation [including causation], the burden of production shifts to the defendant to articulate a legitimate, non-discriminatory reason for the materially adverse action. If the defendant articulates such a reason, the employee, who bears the burden of persuasion throughout the process, must present evidence demonstrating that the articulated reason is pretextual and that the defendant's action was actually motivated by a desire to retaliate against the employee.

*Allen v. McPhee*, 240 S.W.3d 803, 820–21 (Tenn.2007) (internal citations omitted). Where the employer has proffered a legitimate reason for the discharge, the employee can show pretext through evidence that (1) the employer's reason lacks a basis in fact, (2) the employer's reason was not the actual motivation for the discharge, or (3) the employer's reason is not sufficient to warrant a discharge. *Id.* at 823 (citing *Carter v. Univ. of Toledo*, 349 F.3d 269, 274 (6th Cir.2003)). When the employee produces evidence raising a genuine dispute as to whether the employer's stated reason is pretextual, summary judgment is inappropriate. *See id.*

Here, the employer, Berkline LLC ("Berkline"), challenges the ability of the

employee, Gerry G. Kinsler ("Kinsler"), to establish the causation element of his claim. Specifically Berkline argues that Kinsler cannot show that his rejection of Berkline's offer to settle his workers' compensation claim was a substantial factor in Berkline's decision to terminate him. *Guy v. Mutual of Omaha Ins. Co.*, 79 S.W.3d 528, 535 (Tenn.2002); *Chism v. Mid–South Milling Co.*, 762 S.W.2d 552, 556 (Tenn. 1988); *see Anderson v. Standard Register Co.*, 857 S.W.2d 555, 558 (Tenn.1993) (applying the elements of common-law retaliatory discharge to a claim involving an employee allegedly terminated for filing a workers' compensation claim). Berkline does not merely "challenge [Kinsler] to 'put up or shut up,'" as *Hannan* expressly prohibited. *See* 270 S.W.3d at 8. Instead, Berkline's motion relies on evidence that affirmatively negates—or, stated another way, shows that Kinsler cannot prove—the causal connection between his termination and Berkline's rejection of the offer to settle his workers' compensation claim.[1]

As proof of its legitimate, non-discriminatory reason for Kinsler's discharge, Berkline presents evidence that Kinsler's discharge on January 12, 2006, was based solely on the just-received job site evaluation which showed that Kinsler could not perform the job duties of his old position and had nothing to do with the failed January 9 workers' compensation settlement agreement. Specifically, Berkline provided evidence that Kinsler's original 1992 job description stated a lifting requirement of up to seventy-five (75) pounds. Berkline also produced the re-

sults of a "functional capacity evaluation study" conducted on September 25, 2005, after which Kinsler's treating physician imposed a permanent lifting restriction of no more than thirty (30) pounds. Finally, Berkline introduced the job site evaluation conducted on September 21, 2005, by Andrew Smith, a physical therapist. Smith had used information provided by Kinsler, his supervisor, and Berkline's workers' compensation administrator concerning the description of the maintenance multicraftsman position. Smith delivered his evaluation report to Berkline on January 5, 2006. As noted by the lead opinion, this evaluation report concluded that "Mr. Kinsler presently does not have the functional capacities or capabilities to perform all of the essential duties or meet all of the physical demand requirements of a Maintenance Multicraftsman." Berkline contends that it was the opportunity to review this report, which merely coincided in time with the failed workers' compensation settlement proceeding, that resulted in the determination to discharge Kinsler. Furthermore, Kinsler concedes in his deposition that the position requires lifting beyond his restriction, and no fact dispute exists about the timing of the receipt of the report. The foregoing evidence is sufficient under *McDonnell Douglas* to shift the burden of production to Kinsler to show that Berkline's reason for discharging him was pretextual.

To satisfy this burden, Kinsler maintains that the lifting limits set forth in the written job description did not reflect the actual requirements of the job.[2] Although

---

**1.** As the opinions in *Gossett* acknowledge, in the context of a summary judgment motion on a common-law claim for retaliatory discharge, we have never before confronted the question of what the employee must do after the employer has proffered a legitimate reason for the discharge. Nothing in our law would preclude us, however, from importing the

pretext analysis that we have developed in the THRA context, based on corresponding federal causes of action.

**2.** Indeed, Kinsler testified that, although the job description was originally prepared in 1992, he did not receive a copy of that de-

Kinsler conceded there were certain objects he could not lift, he testified that other multicraftsmen were also sometimes unable to lift loads within the seventy-five pound requirement. In those cases, multicraftsmen would work together or make use of tow motors or other equipment.[3]

Kinsler also points to the example of his immediate supervisor, James Gann, whom Berkline retained even though his lifting restrictions fell below the requirements of the written job description. In his position as a *maintenance facilitator*, Gann supervised all multicraftsmen at Berkline's facility in Morristown. Gann testified that he also performed the work of a multicraftsman, sometimes working alongside other multicraftsmen on a daily basis. After a surgically repaired injury to his right shoulder in 2004, Gann was subject to restrictions of occasional lifting of fifty pounds up to waist level and occasional lifting of thirty-five pounds from waist level to overhead height. The written description of the maintenance facilitator position, however, required frequent lifting of up to fifty pounds, and, as mentioned above, multicraftsmen were required to perform occasional lifting of up to seventy-five pounds. Kinsler points out, however, that Berkline did not terminate Gann in 2004 after these lifting restrictions had been imposed, even though he immediately became unable to fulfill the written lifting job requirements. While Berkline contends that Gann's employment in a different position with different lifting requirements is not relevant to Kinsler's termination, it is for the trier of fact to weigh the evidence.[4]

As additional support for pretext, Kinsler offers evidence that his lifting restrictions predate this injury but were never previously made an issue before he declined to settle the workers' compensation case. A March 1984 inter-office memorandum prepared by Ruby Glasscock on Berkline stationery indicates that Kinsler declined to return from a layoff to a position as a final trim trainee because, following a motorcycle accident several years prior, his doctor had instructed him never to lift more than forty pounds continually. Berkline contends that no medical docu-

---

scription until after he had suffered his on-the-job injury in 2005.

3. Issues regarding the qualifications for a particular job must be addressed with care. Defining the nature of the work and the qualifications and duties of the jobs to be performed are the employer's prerogatives, not the employee's. In Tennessee, employers have long had the right to make independent assessments of the needs of their businesses and of their employees' performance. *Stein v. Davidson Hotel Co.*, 945 S.W.2d 714, 717 (Tenn.1992). In the absence of a contract, employers are likewise not obligated to replace an injured employee's job with another job that the employee can perform. *Leatherwood v. United Parcel Serv.*, 708 S.W.2d 396, 401–02 (Tenn.Ct.App.1985).

4. When an employee bases a claim of retaliation or discrimination on the argument that other employees received different treatment, it is, of course, appropriate, to require that the other employees were working at jobs that are substantially similar to the plaintiff's position. When an employee relies upon the employer's treatment of other employees to counter an employer's legitimate, non-retaliatory or nondiscriminatory reason for its employment decision, the job duties of the other employee(s) need not be identical but should at least be similar. *Cf. Lee v. Kansas City S. Ry. Co.*, 574 F.3d 253, 259–61 (5th Cir.2009); *Wright v. Murray Guard, Inc.*, 455 F.3d 702, 710 (6th Cir.2006); *Holifield v. Reno*, 115 F.3d 1555, 1562 (11th Cir.1997). In this case, at least for the purpose of summary judgment, it is appropriate to consider Gann's position of maintenance facilitator as substantially similar to the maintenance multicraftsman position that Kinsler held. At trial, however, Berkline may introduce evidence to convince the trier of fact that the positions are not substantially similar.

mentation corroborates this permanent lifting restriction. Indeed, the medical records in Kinsler's personnel file are silent as to any such permanent restrictions preceding the on-the-job injury that Kinsler sustained in 2005. Again, however, the trier of fact is responsible for deciding how much weight to assign to this evidence. The court adjudicating a motion for summary judgment can go no farther than determining whether such evidence of pretext actually exists, and, in this case, it does. Kinsler has met his burden of producing evidence of pretext. Applying the *McDonnell Douglas* framework and the procedures adopted in *Hannan,* I agree with the lead opinion that a genuine issue of material fact remains as to whether Kinsler's rejection of the offer to settle his workers' compensation claim was a substantial factor in Berkline's decision to terminate his employment.

In summary, as explained in my partial concurrence and dissent in Gossett, dispensing with the *McDonnell Douglas* framework at the summary judgment phase in all employment discrimination and retaliation cases is unnecessary. As the foregoing analysis illustrates, the *McDonnell Douglas* framework enables an orderly analysis of the evidence and operates consistently with our law on summary judgment. We should adhere to that framework. Nonetheless, because there is adequate evidence of pretext to establish a genuine issue of material fact, I concur in the judgment affirming the decision of the Court of the Appeals.

I am authorized to state that Justice KOCH concurs in this opinion.