IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
October 18, 2018 Session

## CHS DEVELOPMENT CORPORATION, INC. D/B/A BRIDGE DOCUMENTS v. LAKEVIEW NEUROREHAB CENTER MIDWEST, INC. D/B/A LAKEVIEW SPECIALTY HOSPITAL

Appeal from the Circuit Court for Hamilton County
No. 16C388      L. Marie Williams, Judge

_____

No. E2018-00519-COA-R3-CV

_____

This contract dispute between CHS Development Corporation, Inc. d/b/a Bridge Documents ("CHS"), and Lakeview Neurorehab Center Midwest, Inc. d/b/a Lakeview Specialty Hospital ("Lakeview"), involves the interpretation of contract provisions regarding exclusivity and noncompetition. The trial court determined that the contract provisions at issue were clear and unambiguous and granted summary judgment in favor of CHS. Lakeview has appealed. Determining that the applicable contract provisions are ambiguous, we reverse the trial court's grant of summary judgment to CHS and remand for an evidentiary hearing to determine the contractual intention of the parties with consideration of parol evidence as necessary. Consequently, we vacate the trial court's award of damages and attorney's fees to CHS. We affirm the trial court's denial of summary judgment to Lakeview. We also deny CHS's request for attorney's fees on appeal.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed in Part, Reversed in Part, Vacated in Part; Case Remanded**

THOMAS R. FRIERSON, II, J., delivered the opinion of the court, in which JOHN W. MCCLARTY and KENNY W. ARMSTRONG, JJ., joined.

M. Andrew Pippenger, Chattanooga, Tennessee, for the appellant, Lakeview Neurorehab Center Midwest, Inc. d/b/a Lakeview Specialty Hospital

Harold L. North, Jr., and Kelly Blair Etchells, Chattanooga, Tennessee, for the appellee, CHS Development Corporation, Inc., d/b/a Bridge Documents.

# OPINION

## I. Factual and Procedural Background

On January 18, 2008, Lakeview entered into a written contract ("the Contract") with CHS for medical transcription services. The Contract was for an initial term of two years with automatic renewal for subsequent five-year terms. The Contract's language states, *inter alia*, that Lakeview could terminate the Contract by providing CHS with notice of termination at least ninety days prior to the automatic renewal date. The Contract also includes a provision entitling CHS to reimbursement of expenses and reasonable attorney's fees related to a legal action "[s]hould it become necessary for CHS to retain an attorney to collect any damages owed to CHS under the terms of [the Contract]."

Pertinent to the appellant's issue on appeal, the Contract also contains the following provisions:

> 2. SCOPE. Beginning on or about February 1, 2008, CHS will provide medical transcription services to [Lakeview]'s physicians and other health providers at all [Lakeview]'s locations, and will be the exclusive vendor of outsourced transcription/editing services for [Lakeview].
>
> * * *
>
> 8. NON-COMPETE. During the term of this Agreement, and for a period of two (2) years following its termination, [Lakeview] will not, directly or indirectly, employ, solicit for employment or do business with any employee, agent or sub-contractor of CHS without the express written consent of CHS, whether or not said employee, agent or sub-contractor has actually been engaged on [Lakeview's] behalf or is still engaged by CHS, nor will [Lakeview] do business with any other vendor of the transcription system EMDAT. [Lakeview] acknowledges that this provision will survive this agreement, regardless of the reason for its cancellation.

The first term of the agreement ended in January 2010 with the next term ending in January 2015. On January 18, 2015, the Contract automatically renewed for a second five-year term, set to end in 2020.[1] On February 2, 2016, Lakeview entered into a Contract with a different medical transcription service vendor, SoftScript, Inc. ("SoftScript") for medical transcription services. Although SoftScript provided medical

---

[1] Lakeview argued in its motion for summary judgment that it had terminated the Contract in 2009. The trial court found to the contrary and that the Contract was effective through 2020. Lakeview does not dispute this determination on appeal.

transcription services, it operated with a different platform than the EMDAT system specified in the Contract.

On March 17, 2016, CHS filed a complaint against Lakeview in the Hamilton County Circuit Court ("trial court"), alleging that Lakeview had breached the Contract by failing to abide by the Contract's exclusivity provision and failing to make timely tender of payment for CHS's transcription services provided under the Contract. Lakeview filed an answer and counter-complaint on July 22, 2016, alleging that it had terminated the Contract with CHS and was under no further obligations pursuant to that agreement. CHS subsequently filed a motion for summary judgment on November 17, 2017.

Lakeview also filed a motion for summary judgment on December 13, 2017, alleging that it had not been in breach of the Contract by doing business with SoftScript. Lakeview contended that the Contract's exclusivity and noncompetition provisions were in conflict and created an ambiguity as to whether Lakeview would have been prohibited from entering into a contract with any vendor of medical transcription services or specifically vendors who used the EMDAT system. Lakeview argued that this alleged ambiguity should have been construed against CHS, the contract's drafting party, so that Lakeview would be permitted to contract with any third-party vendor that does not use the specified EMDAT system. In its response to CHS's motion for summary judgment, Lakeview did not dispute that it had been "behind on certain invoices" and stated that it had recently paid $2,509.11 to CHS for transcription services.

On January 30, 2018, the trial court granted CHS's motion for summary judgment and denied Lakeview's motion for summary judgment, based upon its finding that the contract provisions clearly and unambiguously prevented Lakeview from contracting with any other vendor for medical transcription services. The trial court awarded CHS damages in the amount of $127,411.72, plus court costs and attorney's fees. Lakeview timely appealed.

II. Issues Presented

Lakeview presents one issue for our review, which we have restated slightly:

1.      Whether the trial court erred by granting CHS's motion for summary judgment and denying Lakeview's motion for summary judgment upon its determination that the Contract unambiguously prevented Lakeview from contracting with any other vendor for medical transcription services.

CHS presents one additional issue for review, which we have similarly restated as follows:

2.     Whether CHS should be awarded its reasonable attorney's fees and related expenses on appeal.

## III. Standard of Review

The grant or denial of a motion for summary judgment is a matter of law; therefore, our standard of review is *de novo* with no presumption of correctness. *See Rye v. Women's Care Ctr. of Memphis, MPLLC,* 477 S.W.3d 235, 250 (Tenn. 2015); *Dick Broad. Co., Inc. of Tenn. v. Oak Ridge FM, Inc.*, 395 S.W.3d 653, 671 (Tenn. 2013) (citing *Kinsler v. Berkline, LLC*, 320 S.W.3d 796, 799 (Tenn. 2010)). As such, this Court must "make a fresh determination of whether the requirements of Rule 56 of the Tennessee Rules of Civil Procedure have been satisfied." *Rye*, 477 S.W.3d at 250. As our Supreme Court has explained concerning the requirements for a movant to prevail on a motion for summary judgment pursuant to Tennessee Rule of Civil Procedure 56:

> [W]hen the moving party does not bear the burden of proof at trial, the moving party may satisfy its burden of production either (1) by affirmatively negating an essential element of the nonmoving party's claim or (2) by demonstrating that the nonmoving party's evidence *at the summary judgment stage* is insufficient to establish the nonmoving party's claim or defense. We reiterate that a moving party seeking summary judgment by attacking the nonmoving party's evidence must do more than make a conclusory assertion that summary judgment is appropriate on this basis. Rather, Tennessee Rule 56.03 requires the moving party to support its motion with "a separate concise statement of material facts as to which the moving party contends there is no genuine issue for trial." Tenn. R. Civ. P. 56.03. "Each fact is to be set forth in a separate, numbered paragraph and supported by a specific citation to the record." *Id.* When such a motion is made, any party opposing summary judgment must file a response to each fact set forth by the movant in the manner provided in Tennessee Rule 56.03. "[W]hen a motion for summary judgment is made [and] . . . supported as provided in [Tennessee Rule 56]," to survive summary judgment, the nonmoving party "may not rest upon the mere allegations or denials of [its] pleading," but must respond, and by affidavits or one of the other means provided in Tennessee Rule 56, "set forth specific facts" *at the summary judgment stage* "showing that there is a genuine issue for trial." Tenn. R. Civ. P. 56.06. The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co.,* 475 U.S. [574,] 586, 106 S. Ct. 1348 [(1986)]. The nonmoving party must demonstrate the existence of specific facts in the record which could lead a rational trier of fact to find in favor of the nonmoving party. If a summary judgment motion is filed before adequate time for discovery has been provided, the nonmoving party may

seek a continuance to engage in additional discovery as provided in Tennessee Rule 56.07.  However, after adequate time for discovery has been provided, summary judgment should be granted if the nonmoving party's evidence *at the summary judgment stage* is insufficient to establish the existence of a genuine issue of material fact for trial.  Tenn. R. Civ. P. 56.04, 56.06.  The focus is on the evidence the nonmoving party comes forward with at the summary judgment stage, not on hypothetical evidence that theoretically could be adduced, despite the passage of discovery deadlines, at a future trial.

*Rye*, 477 S.W.3d at 264-65 (emphasis in original).  Pursuant to Tennessee Rule of Civil Procedure 56.04, the trial court must "state the legal grounds upon which the court denies or grants the motion" for summary judgment, and our Supreme Court has instructed that the trial court must state these grounds "before it invites or requests the prevailing party to draft a proposed order."  *See Smith v. UHS of Lakeside, Inc.*, 439 S.W.3d 303, 316 (Tenn. 2014).

We review the trial court's interpretation of a written agreement *de novo* with no presumption of correctness.  *See Ray Bell Constr. Co., Inc. v. State, Tenn. Dep't of Transp.*, 356 S.W.3d 384, 386 (Tenn. 2011); *Cracker Barrel Old Country Store, Inc. v. Epperson*, 284 S.W.3d 303, 308 (Tenn. 2009).   As this Court has previously explained:

In resolving a dispute concerning contract interpretation, our task is to ascertain the intention of the parties based upon the usual, natural, and ordinary meaning of the contract language.  *Planters Gin Co. v. Fed. Compress & Warehouse Co., Inc.*, 78 S.W.3d 885, 889-90 (Tenn. 2002) (citing *Guiliano v. Cleo, Inc.*, 995 S.W.2d 88, 95 (Tenn. 1999)).   A determination of the intention of the parties "is generally treated as a question of law because the words of the contract are definite and undisputed, and in deciding the legal effect of the words, there is no genuine factual issue left for a jury to decide."  *Planters Gin Co.*, 78 S.W.3d at 890 (citing 5 Joseph M. Perillo, *Corbin on Contracts*, § 24.30 (rev. ed. 1998); *Doe v. HCA Health Servs. of Tenn., Inc.*, 46 S.W.3d 191, 196 (Tenn. 2001)).   The central tenet of contract construction is that the intent of the contracting parties at the time of executing the agreement should govern.  *Planters Gin Co.*, 78 S.W.3d at 890.  The parties' intent is presumed to be that specifically expressed in the body of the contract.   "In other words, the object to be attained in construing a contract is to ascertain the meaning and intent of the parties as expressed in the language used and to give effect to such intent if it does not conflict with any rule of law, good morals, or public policy."  *Id.* (quoting 17 Am. Jur. 2d, Contracts, § 245).

*Kafozi v. Windward Cove, LLC*, 184 S.W.3d 693, 698 (Tenn. Ct. App. 2005), *perm. app. denied* (Tenn. Jan. 30, 2006).

## IV.  Interpretation of Contract Provisions

Lakeview contends that the Contract's provisions regarding exclusivity and noncompetition contain conflicting terms and create an ambiguity as to whether Lakeview was prohibited from contracting with SoftScript.  In response, CHS asserts that the terms of the Contract are unambiguous and do not conflict, making Lakeview's actions tantamount to a material breach of contract.  CHS argues in the alternative that even if the provisions at issue do create an ambiguity, parol evidence resolves the ambiguity by demonstrating that the parties considered CHS to be the exclusive vendor of medical transcription services for Lakeview.  Upon a thorough review of the Contract, we agree with Lakeview that the Contract is ambiguous with regard to the exclusivity and noncompetition clauses.

In interpreting a contract, our "initial task is to determine whether the language in the contract is ambiguous."  *Ray Bell*, 356 S.W.3d at 386-87 (citing *Planters Gin Co. v. Fed. Compress & Warehouse Co.*, 78 S.W.3d 885, 890 (Tenn. 2002)).  "If the contract language is unambiguous, then the parties' intent is determined from the four corners of the contract."  *Ray Bell*, 356 S.W.3d at 387 (citing *Whitehaven Cmty. Baptist Church v. Holloway*, 973 S.W.2d 592, 596 (Tenn. 1998)).  This Court has explained the principles applied to determine whether the contract language is clear or ambiguous as follows:

> The language in dispute must be examined in the context of the entire agreement.  *Cocke County Bd. of Highway Commrs. v. Newport Utils. Bd.*, 690 S.W.2d 231, 237 (Tenn. 1985).  The language of a contract is ambiguous when its meaning is uncertain and when it can be fairly construed in more than one way.  *Farmers-Peoples Bank v. Clemmer*, 519 S.W.2d 801, 805 (Tenn. 1975).  "A strained construction may not be placed on the language used to find ambiguity where none exists."  *Id.*

*Vanbebber v. Roach*, 252 S.W.3d 279, 284 (Tenn. Ct. App. 2007), *perm. app. denied* (Tenn. Mar. 3, 2008).

It is well settled that "ambiguities in a contract are to be construed against the party drafting it."  *Frank Rudy Heirs Assocs. v. Moore & Assocs., Inc.*, 919 S.W.2d 609, 613 (Tenn. Ct. App. 1995).  In interpreting the language of a contract, we are required to use "the usual, natural, and ordinary meaning" of terms.  *See Staubach Retail Servs.-Se., LLC v. H.G. Hill Realty Co.*, 160 S.W.3d 521, 526 (Tenn. 2005); *Adkins v. Bluegrass Estates,* 360 S.W.3d 404, 411 (Tenn. Ct. App. 2011).

The Contract's exclusivity provision states that "CHS will provide medical transcription services to [Lakeview's] physicians and other health providers at all [Lakeview]'s locations, <u>and will be the exclusive vendor of outsourced transcription/editing services for [Lakeview]</u> (emphasis added)." In contrast, the Contract's noncompetition provision states in relevant portion that during the term of the Contract and for two years thereafter, Lakeview "will not, directly or indirectly, employ, solicit for employment or do business with any employee, agent or sub-contractor of CHS" "<u>nor will [Lakeview] do business with any other vendor of the transcription system EMDAT</u> (emphasis added)."

In its memorandum opinion incorporated into the judgment, the trial court found that the Contract was "clear and unambiguous" and that the provisions contained in these paragraphs could "easily be reconciled." In determining the contract provisions to be unambiguous, the trial court reasoned as follows:

> Paragraph 2 provides that [CHS] will be the exclusive vendor of certain services throughout the term of the agreement; whereas, paragraph 8 provides certain limitations on [Lakeview's] activities, including a limitation on the defendant Lakeview's doing business with any other vendor with the transcription system EMDAT during the term of the contract and for two years thereafter. Accordingly, the Court finds the contract clear and unambiguous. Entering into a contract with SoftScript even though SoftScript does not use EMDAT services is a violation of the agreement between the parties that [CHS] will be the exclusive vendor of outsourced transcription/editing services for [Lakeview].

Upon our careful review, we respectfully disagree with the trial court's conclusion that the contract provisions are clear and unambiguous.

In the case at bar, the parties' Contract can reasonably be interpreted in more than one way and is, therefore, ambiguous. *See Vanbebber*, 252 S.W.3d at 284 ("The language of a contract is ambiguous when its meaning is uncertain and when it can fairly be construed in more than one way."). The exclusivity provision sets forth the scope of the parties' contract and provides that CHS "will be the exclusive vendor of outsourced transcription/editing services" for Lakeview. This contract language suggests that CHS cannot contract with any other company for transcription or editing services during the term of the Contract. In the separate noncompetition paragraph, however, Lakeview is prohibited from conducting business with "any other vendor of the transcription system EMDAT" while the Contract is in effect and for two years thereafter. This paragraph therefore contemplates that Lakeview may contract with other transcription service vendors who do not use the EMDAT transcription system. As such, we conclude that the respective contract provisions two and eight establish an ambiguity.

As in this case, where we have determined the contract provisions to be ambiguous, our Supreme Court has explained:

> When contractual language is found to be ambiguous, the court must apply established rules of construction to determine the intent of the parties. An ambiguous provision in a contract generally will be construed against the party drafting it. Furthermore, when a contractual provision is ambiguous, a court is permitted to use parol evidence, including the contracting parties' conduct and statements regarding the disputed provision, to guide the court in construing and enforcing the contract.

*Allstate Ins. Co. v. Watson*, 195 S.W.3d 609, 611-12 (Tenn. 2006) (additional internal citations omitted).

In the instant action, because the trial court found that the Contract was clear and unambiguous, the trial court properly did not consider parol evidence. However, as we have determined the contract provisions to be ambiguous, we further determine that a genuine issue of material fact exists regarding the intent of the parties. As such, we remand to the trial court for an evidentiary hearing and the application of established rules of construction with consideration of parol evidence as necessary to determine the intention of the parties. Having concluded that summary judgment is not appropriate in this case, we reverse the trial court's grant of summary judgment to CHS and affirm the trial court's denial of summary judgment to Lakeview. Ergo, we vacate the trial court's award of damages and attorney's fees to CHS for reconsideration after the trial court has resolved the issue regarding the parties' contractual intent. *See, e.g., Schwartz v. Diagnostix Network All., LLC*, No. M2014-00006-COA-R3-CV, 2014 WL 6453676, at *13 (Tenn. Ct. App. Nov. 17, 2014).

## V. Attorney's Fees

CHS seeks an award of reasonable costs and attorney's fees on appeal pursuant to the Contract's provisions. The attorney's fees provision of the contract states in pertinent part: "Should it become necessary for CHS to retain an attorney to collect any damages owed to CHS under the terms of this Service Agreement, CHS will be entitled to recover, in addition to its damages, reasonable attorney's fees and other expenses normally associated with the collection process." However, inasmuch as Lakeview has partially prevailed with regard to its issue on appeal and this Court has vacated the trial court's award of damages to CHS, we determine that an award of attorney's fees on appeal to CHS is not warranted.

## VI. Conclusion

For the aforementioned reasons, we reverse the trial court's judgment granting summary judgment to CHS. Consequently, we vacate the trial court's award of damages and attorney's fees to CHS for reconsideration after the issue regarding the parties contractual intent has been resolved. We affirm the trial court's denial of Lakeview's motion for summary judgment. We also deny CHS's request for attorney's fees and costs on appeal. We remand this matter to the trial court for an evidentiary hearing and application of established rules of contract construction with consideration of parol evidence as necessary to determine the intent of the parties. The costs on appeal are taxed to the appellee, CHS Development Corporation, Inc.

_____
THOMAS R. FRIERSON, II, JUDGE