IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
June 21, 2024 Session

## NUCSAFE, INC., ET AL. v. STEPHEN FARBER ET AL.

**Appeal from the Chancery Court for Anderson County**
**No. 22CH4401          James W. Brooks, Jr., Chancellor**

_____

### No. E2023-01809-COA-R3-CV
_____

This is an appeal from a grant of summary judgment wherein the trial court found that the plaintiff corporations were barred, based on a prior lawsuit between the same parties, from litigating their claim that a promissory note had been procured by fraudulent inducement. The defendants in the instant case, who were the plaintiffs in the prior action, had successfully moved for summary judgment in that prior action concerning the enforcement of a promissory note against the corporations, which were the defendants in the prior action. In that action, the trial court found that the corporations had waived their fraud defense because they had neither pled fraud as an affirmative defense in their answer nor requested permission to amend their answer. The trial court ultimately held that the promissory note was enforceable and entered judgment against the corporations. On appeal in the prior action, this Court affirmed the trial court's judgment, including its ruling that the defense of fraud had been waived. In the present action, the corporations—now plaintiffs—sought to repudiate the same promissory note, alleging that it was induced by fraud. The trial court granted the defendants' motion for summary judgment based on the doctrines of *res judicata* and collateral estoppel, as well as expiration of the applicable statute of limitations. The plaintiff corporations have appealed. Discerning no reversible error, we affirm the trial court's judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court
Affirmed; Case Remanded**

THOMAS R. FRIERSON, II, J., delivered the opinion of the court, in which D. MICHAEL SWINEY, C.J., and JOHN W. MCCLARTY, J., joined.

Mark E. Brown, Knoxville, Tennessee, for the appellants, Nucsafe, Inc., and Breton Equity Company Corp.

C. Gavin Shepherd, Knoxville, Tennessee, for the appellees, Stephen Farber and John Maisel.

**OPINION**

I. Factual and Procedural Background

On August 17, 2022, Nucsafe, Inc. ("Nucsafe"), and Breton Equity Company Corp. ("Breton") (collectively, "the Corporations"), filed a complaint in the Anderson County Chancery Court ("trial court") against Stephen Farber and John Maisel (collectively, "the Personal Representatives") in their capacities as personal representatives for the estate of the decedent, Richard Seymour ("Decedent"). In their complaint, the Corporations averred that Ted Doukas, who was the president of Breton and who owned a majority of Breton's shares with his wife, had become involved with Nucsafe in December 2014. The Corporations averred that Mr. Doukas "saw value in Nucsafe and its patents and products" even though Nucsafe was in financial distress at that time. According to the Corporations, Mr. Doukas caused Breton to loan Nucsafe $1,250,000.00 in exchange for Breton's receiving a thirty-percent ownership interest in Nucsafe. Prior to Mr. Doukas's involvement in Nucsafe, Decedent had been the president and chief executive officer of the company.

The Corporations averred that Decedent had immediately informed Mr. Doukas that Decedent had previously loaned Nucsafe nearly $1,750,000.00 and that such loan remained outstanding. Nucsafe owed other debts as well, including bank loans secured by its real property, patents, and equipment. The Corporations further averred that Nucsafe's financial troubles had stabilized for a time due to Mr. Doukas's participation and influx of capital. The Corporations also attributed Nucsafe's prior financial instability to Decedent's alleged mismanagement caused by personal issues.

According to the Corporations, Mr. Doukas and Decedent entered into negotiations for the purpose of reducing Decedent's involvement in Nucsafe. However, during the negotiations, Decedent "kept demanding that he be repaid the money he allegedly loaned" to Nucsafe and threatened that he could "call the loan" at any time, which would effectively destroy the company. In 2015, Decedent and his ex-wife agreed to transfer a majority of their shareholders' interest in Nucsafe to Breton. Mr. Doukas and Decedent also arranged for Nucsafe to execute a "Modified and Amended Promissory Note," with Breton as the guarantor, in the amount of $1,748,198.26, to be paid to Decedent over a term of years. However, the payments were to be made by Nucsafe. Breton additionally paid a $40,000.00 lump sum to Decedent. Decedent then resigned from his position as an officer of Nucsafe but continued to receive a salary from Nucsafe for consulting work. Over the ensuing years, several addenda to the Modified and Amended Promissory Note were executed (Modified and Amended Promissory Note and addenda, collectively, "the Note").

Thereafter, Nucsafe made payments on the Note although the company continued to experience financial issues. In 2020, Nucsafe was forced to sell assets to pay its debts.

The Corporations averred that before the sale proceeds could be distributed, one of Nucsafe's creditors filed an involuntary Chapter 7 bankruptcy proceeding. Although Nucsafe was able to resolve the claim without continuing through a bankruptcy proceeding, the Corporations allegedly discovered, following a thorough review of the financial records, that Decedent had never actually loaned money to Nucsafe. At that juncture, Nucsafe had purportedly paid $766,495.15 to Decedent toward satisfaction of the Note. In their complaint, the Corporations claimed, *inter alia*, that the Note was obtained by fraud, and they accordingly sought declaratory relief determining the Note to be null and void. The Corporations also sought a monetary judgment in the amount of $766,495.15 plus pre- and post-judgment interest. The Corporations attached copies of the Note and its amendments.

The Personal Representatives filed a motion to dismiss, pursuant to Tennessee Rule of Civil Procedure 12.02(6), on September 30, 2022. They averred that Decedent had died on June 11, 2021, and that Tennessee's statute of limitations for creditors' claims was one year from the date of death pursuant to Tennessee Code Annotated § 30-2-310. In turn, the Corporations filed a response to the motion to dismiss on November 7, 2022, arguing that the creditors' statute of limitations was not applicable because their lawsuit was against the Personal Representatives, who represented Decedent for purposes of the tort claim alleged by Nucsafe, and was not an action against Decedent's estate. The Corporations cited Tennessee Code Annotated § 20-5-103(a)[1] in support of their argument that it was proper to sue Decedent's personal representatives. The Personal Representatives filed a reply on November 16, 2022, contending that § 20-5-103 did not apply because no injury, death, or property damage was involved.

On January 27, 2023, the trial court entered an order denying the Personal Representatives' motion to dismiss because the court determined that the action was not a creditor's claim for a debt of the estate. The court agreed with the Corporations that Tennessee Code Annotated § 20-5-103 was the applicable statute because it provided that, as the court summarized, "torts committed by a person who thereafter passes survive and may be prosecuted against the personal representative of the tortfeasor." Thereafter, the Personal Representatives filed an answer on February 21, 2023, contending that the action was (1) time-barred pursuant to the three-year statute of limitations applicable to claims of fraudulent inducement, (2) barred as a compulsory counterclaim in a prior action between the parties, and (3) barred by the holdings and judgment in the prior action. They further pled the affirmative defenses of unclean hands and unjust enrichment.

---

[1] Tennessee Code Annotated § 20-5-103(a) (West August 11, 2009, to current) provides:

> In all cases where a person commits a tortious or wrongful act causing injury or death to another, or property damage, and the person committing the wrongful act dies before suit is instituted to recover damages, the death of that person shall not abate any cause of action that the plaintiff would have otherwise had, but the cause of action shall survive and may be prosecuted against the personal representative of the tort-feasor or wrongdoer.

On September 11, 2023, the Personal Representatives moved for summary judgment, relying on the doctrines of *res judicata*, collateral estoppel, and law of the case by reason of the prior action between the same parties. *See Farber v. Nucsafe, Inc.*, No. E2022-00428-COA-R3-CV, 2023 WL 2519411 (Tenn. Ct. App. Mar. 15, 2023) ("*Farber I*"). The Personal Representatives also argued that the claims were barred by the applicable statute of limitations and because they were compulsory counterclaims not instituted in the prior action. *See id*. The Corporations filed a response in opposition on October 20, 2023, contending that fraudulent inducement was neither raised in *Farber I* at the trial court level nor addressed in the appeal such that the claim had never been litigated. *See id*. Furthermore, the Corporations argued that compulsory counterclaims applied solely to claims other than tort claims pursuant to Tennessee Rule of Civil Procedure 13.01.

The trial court conducted a hearing concerning the Personal Representatives' motion on October 27, 2023. The trial court subsequently granted summary judgment in favor of the Personal Representatives by order dated November 29, 2023. In doing so, the court determined that this Court had concluded in *Farber I* that the Note was enforceable. Accordingly, the court found that all requirements of *res judicata* had been met. The court further held that collateral estoppel also barred the action because the parties in *Farber I* were identical and because the issue of whether the Note was enforceable had previously been litigated. As to the statute of limitations, the court agreed that the action was time-barred due to the three-year limitation period for fraud cases, stating that "[t]he [c]ourt is of the opinion that Plaintiffs had knowledge of facts sufficient to put a reasonable person on notice of an injury as a result of wrongful conduct in 2015 and suit in this matter was not filed until 2022." *See* Tenn. Code Ann. § 28-3-105 (West 1945 to current) (setting forth a three-year statute of limitations for fraud). The court awarded to the Personal Representatives $12,049.23 in reasonable attorney's fees pursuant to the Note's terms and taxed the costs to the Corporations. The Corporations timely appealed.

## II. Issues Presented

The Corporations present the following issues for this Court's review, which we have restated slightly:

1. Whether the trial court erred by granting summary judgment in favor of the Personal Representatives based on the doctrine of *res judicata*.

2. Whether the trial court erred by granting summary judgment in favor of the Personal Representatives based on the doctrine of collateral estoppel.

3. Whether the trial court erred by granting summary judgment in favor of the Personal Representatives upon holding that the Corporations' claims were barred by the applicable statute of limitations.

- 4 -

The Personal Representatives restate the issues and raise an additional issue as follows:

> 4. Whether, in the alternative, the Personal Representatives are entitled to summary judgment based on the law of the case doctrine.

## III. Standard of Review

The grant or denial of a motion for summary judgment is a matter of law; therefore, our standard of review is *de novo* with no presumption of correctness. *See Rye v. Women's Care Ctr. of Memphis, MPLLC*, 477 S.W.3d 235, 250 (Tenn. 2015); *Dick Broad. Co. of Tenn. v. Oak Ridge FM, Inc.*, 395 S.W.3d 653, 671 (Tenn. 2013) (citing *Kinsler v. Berkline, LLC*, 320 S.W.3d 796, 799 (Tenn. 2010)). As such, this Court must "make a fresh determination of whether the requirements of Rule 56 of the Tennessee Rules of Civil Procedure have been satisfied." *Rye*, 477 S.W.3d at 250. As our Supreme Court has explained concerning the requirements for a movant to prevail on a motion for summary judgment pursuant to Tennessee Rule of Civil Procedure 56:

> [W]hen the moving party does not bear the burden of proof at trial, the moving party may satisfy its burden of production either (1) by affirmatively negating an essential element of the nonmoving party's claim or (2) by demonstrating that the nonmoving party's evidence *at the summary judgment stage* is insufficient to establish the nonmoving party's claim or defense. We reiterate that a moving party seeking summary judgment by attacking the nonmoving party's evidence must do more than make a conclusory assertion that summary judgment is appropriate on this basis. Rather, Tennessee Rule 56.03 requires the moving party to support its motion with "a separate concise statement of material facts as to which the moving party contends there is no genuine issue for trial." Tenn. R. Civ. P. 56.03. "Each fact is to be set forth in a separate, numbered paragraph and supported by a specific citation to the record." *Id.* When such a motion is made, any party opposing summary judgment must file a response to each fact set forth by the movant in the manner provided in Tennessee Rule 56.03. "[W]hen a motion for summary judgment is made [and] . . . supported as provided in [Tennessee Rule 56]," to survive summary judgment, the nonmoving party "may not rest upon the mere allegations or denials of [its] pleading," but must respond, and by affidavits or one of the other means provided in Tennessee Rule 56, "set forth specific facts" *at the summary judgment stage* "showing that there is a genuine issue for trial." Tenn. R. Civ. P. 56.06. The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co.*, 475 U.S. [574,] 586, 106 S. Ct. 1348, [89 L. Ed. 2d 538 (1986)]. The nonmoving party must demonstrate the existence of specific facts in the record which could lead a rational trier

of fact to find in favor of the nonmoving party. If a summary judgment motion is filed before adequate time for discovery has been provided, the nonmoving party may seek a continuance to engage in additional discovery as provided in Tennessee Rule 56.07. However, after adequate time for discovery has been provided, summary judgment should be granted if the nonmoving party's evidence *at the summary judgment stage* is insufficient to establish the existence of a genuine issue of material fact for trial. Tenn. R. Civ. P. 56.04, 56.06. The focus is on the evidence the nonmoving party comes forward with at the summary judgment stage, not on hypothetical evidence that theoretically could be adduced, despite the passage of discovery deadlines, at a future trial.

*Rye*, 477 S.W.3d at 264-65. Pursuant to Tennessee Rule of Civil Procedure 56.04, the trial court must "state the legal grounds upon which the court denies or grants the motion" for summary judgment, and our Supreme Court has instructed that the trial court must state these grounds "before it invites or requests the prevailing party to draft a proposed order." *See Smith v. UHS of Lakeside, Inc.*, 439 S.W.3d 303, 316 (Tenn. 2014). "Whether the nonmoving party is a plaintiff or a defendant—and whether or not the nonmoving party bears the burden of proof at trial on the challenged claim or defense—at the summary judgment stage, '[t]he nonmoving party must demonstrate the existence of specific facts in the record which could lead a rational trier of fact to find in favor of the nonmoving party.'" *TWB Architects, Inc. v. The Braxton, LLC*, 578 S.W.3d 879, 889 (Tenn. 2019) (quoting *Rye*, 477 S.W.3d at 265).

## IV. *Res Judicata*

We begin our analysis by considering whether the trial court properly determined that the doctrine of *res judicata* barred the present lawsuit. *Res judicata*, also known as claim preclusion, is premised on the fundamental principle that "a party who once has had a chance to litigate a claim before an appropriate tribunal usually ought not to have another chance to do so." *Regions Bank v. Prager*, 625 S.W.3d 842, 847 (Tenn. 2021) (quoting Restatement (Second) of Judgments, ch. 1, at 6 (Am. L. Inst. 1982)). "The doctrine of res judicata precludes a subsequent lawsuit 'between the same parties, or their privies, on the same claim with respect to all the issues which were, or could have been, litigated in the former lawsuit.'" *Armbrister v. Armbrister*, 414 S.W.3d 685, 698 n.15 (Tenn. 2013) (quoting *Jackson v. Smith*, 387 S.W.3d 486, 491 (Tenn. 2012)). *Res judicata* promotes finality and "prevents inconsistent or contradictory judgments, conserves judicial resources, and protects litigants from the cost and vexation of multiple lawsuits." *Id.* "In light of its purposes, res judicata has been characterized as a 'rule of rest.'" *Regions Bank*, 625 S.W.3d at 847 (quoting *Jackson*, 387 SW.3d at 491).

As relevant to this action, we note that *Farber I* was initiated by the Decedent and sought enforcement of the Note against the Corporations when Nucsafe had ceased making

payments on the Note in 2020. *See Farber I*, 2023 WL 2519411, at *1. The Decedent died during the pendency of that litigation, and the Personal Representatives were substituted as the plaintiffs in the action. *Id.* at *2. The Personal Representatives subsequently sought a grant of summary judgment concerning the Note's enforceability, and the Corporations argued fraud in the inducement as a defense to enforcement of the Note in their response to the Personal Representatives' motion for summary judgment. *Id.* The trial court in *Farber I* ruled that the affirmative defense of fraud/fraudulent inducement had been waived because it had not been pled in the answer. *Id.* Ultimately, the trial court in *Farber I* determined that the Note was enforceable and entered a judgment against the Corporations. *Id.* at 2.

The Corporations appealed, and the *Farber I* Court affirmed the trial court in all respects, including the determination that the fraud defense had been waived. *Id.* at *2 n.3. In doing so, this Court specifically noted:

> We acknowledge that [the Corporations] make an abbreviated argument in their appellate brief that the trial court erred by holding that [the Corporations] waived the defense of fraud because they failed to include the defense in their answer as an affirmative defense pursuant to Tennessee Rule of Civil Procedure 8.03. Specifically, they contend that the trial court erred by failing to give [the Corporations] the opportunity to amend their Answer. We note, however, that [the Corporations] did not file a motion to amend their pleadings to assert fraud as an affirmative defense. Accordingly, this issue is waived.

*Id.*

When a party asserts the defense of *res judicata*, as the Personal Representatives have done here, that party bears the burden of demonstrating:

(1)      that the underlying judgment was rendered by a court of competent jurisdiction;

(2)      that the same parties or their privies were involved in both suits;

(3)      that the same claim or cause of action was asserted in both suits; and

(4)      that the underlying judgment was final and on the merits.

*Regions Bank*, 625 S.W.3d at 847-48 (citing *Elvis Presley Enters., Inc. v. City of Memphis*, 620 S.W.3d 318, 324 (Tenn. 2021)).

In the case at bar, there is no dispute that the first, second, and fourth elements of *res judicata* are satisfied. Concerning the first element, both *Farber I* and the current lawsuit were filed in and decided by the Anderson County Chancery Court, and there has been no allegation that the trial court lacked jurisdiction. Respecting the second element, Decedent was the original plaintiff in the prior lawsuit, and the Corporations were the defendants. Following Decedent's death, the Personal Representatives were substituted as parties in Decedent's stead prior to the trial court's adjudication. In the current lawsuit, the Corporations have sued the Personal Representatives. Thus, the same parties were involved in both lawsuits.

Lastly, *Farber I* was adjudicated by a grant of summary judgment, and a grant of summary judgment is a final judgment on the merits. *See* Tenn. R. Civ. P. 41.02; *see, e.g.*, *Grigsby v. Univ. of Tenn. Med. Ctr.*, No. E2005-01099-COA-R3-CV, 2006 WL 408053, at *3 (Tenn. Ct. App. Feb. 22, 2006). Therefore, the fourth element of *res judicata* is also satisfied. The present controversy centers upon the third element—whether the Personal Representatives established that the claims or causes of action asserted in both lawsuits were the same.

Concerning the third element, our Supreme Court has adopted the "transactional" standard, which provides as follows:

> When a valid and final judgment rendered in an action extinguishes the plaintiff's claim . . . the claim extinguished includes all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose.

*Creech v. Addington*, 281 S.W.3d 363, 379-80 (Tenn. 2009) (citing Restatement (Second) of Judgments § 24(1)). "Two suits, therefore, shall be deemed the same 'cause of action' for purposes of res judicata where they arise out of the same transaction or a series of connected transactions." *Creech*, 281 S.W.3d at 381.

We reiterate that *Farber I* was initiated by Decedent, who sought enforcement of the Note against the Corporations. *See Farber I*, 2023 WL 2519411, at *1. In the case at bar, the Note in controversy is the same promissory note disputed in *Farber I*, wherein the trial court found the Note to be enforceable. *Id.* at *2. The *Farber I* Court affirmed that determination on appeal. *Id.* Because the same Note is involved in both actions and both actions question the enforceability of same, we determine that both lawsuits "arise out of the same transaction or series of connected transactions." *See Creech*, 281 S.W.3d at 381. Accordingly, we conclude that *Farber I* and the instant case assert the same "cause of action" for purposes of *res judicata*.

In addition, failing to properly raise the issue of fraud, which "could have been litigated and decided as an incident to or essentially connected with the subject matter of

the prior litigation," results in forfeiture of that opportunity in a subsequent action pursuant to the doctrine of *res judicata*. *See Davis v. Williams*, No. E2010-01139-COA-R3-CV, 2011 WL 335069, at *3-4 (Tenn. Ct. App. Jan. 31, 2011) (citing *Gerber v. Holcomb*, 219 S.W.3d 914, 918-19 (Tenn. Ct. App. 2006)). This is true

> regardless of the form the issue may take in the subsequent action[,] whether the subsequent action involves the same or different form or proceedings, or whether the second action is upon the same or a different cause of action, subject matter, claim, or demand, as the earlier action. In such cases, it is also immaterial that the two actions are based on different grounds, or tried on different theories, or instituted for different purposes, and seek different relief . . . .

*Davis*, 2011 WL 335069, at *3 (quoting *Gerber*, 219 S.W.3d at 919).

In the instant action, the Corporations asserted a fraudulent inducement claim against the Personal Representatives despite the *Farber I* trial court's determination that the Corporations had waived any issue of fraud in the inducement by failing to plead it as an affirmative defense in their answer. *See Farber I*, 2023 WL 2519411, at *2 n.3; Tenn. R. Civ. P. 8.03. The Corporations argue that this action is different because fraud was never actually litigated in *Farber I*. However, under Tennessee law, it well established that a party generally "waives an affirmative defense if it does not include the defense in an answer or responsive pleading." *See Pratcher v. Methodist Healthcare Memphis Hosps.*, 407 S.W.3d 727, 736 (Tenn. 2013) (citing Tenn. R. Civ. P. 12.08). Furthermore, an affirmative defense can be waived by failure to plead it with specificity. *See Pratcher*, 407 S.W.3d at 736.

We reiterate that the *Farber I* trial court determined that the Corporations had only attempted to raise a fraudulent inducement defense in response to a motion for summary judgment and had failed to raise it as an affirmative defense in their answer. *See Farber I*, 2023 WL 2519411, at *2. On appeal in *Farber I*, the Corporations argued that by granting the Personal Representatives' motion for summary judgment, the trial court had effectively denied the Corporations an opportunity to amend their answer. *Id.* at *2 n.3. However, the *Farber I* Court concluded that the Corporations' fraud defense had been waived because, *inter alia*, the Corporations had never moved to amend their pleadings to assert the defense. *Id.* We agree.

The issue presented here has been decided by this Court on prior occasions. *See Davis*, 2011 WL 335069, at *4; *see also Foster v. Fed. Nat'l Mortg. Ass'n*, No. E2012-02346-COA-R3-CV, 2013 WL 3961193, at *3-4 (Tenn. Ct. App. July 31, 2013). For example, in *Davis*, this Court addressed whether a judgment from an unlawful detainer lawsuit precluded a fraud allegation in a subsequent action when the fraud alleged could have been raised as a defense in the prior action. *Davis*, 2011 WL 335069, at *3. The

defendants in the subsequent action (plaintiffs in the prior action) contended that the fraud claim was precluded because it had not been pled in the unlawful detainer action; however, the plaintiffs (defendants in the prior action) maintained that the cause of action in the subsequent case was not the same as in the prior case. *Id.* at \*4. The *Davis* Court found in favor of the defendants by reason of the doctrine of *res judicata*, holding that an affirmative defense that can be raised must be raised when it is "essentially connected with the subject matter of the prior litigation." *Id.* (quoting *Gerber*, 219 S.W.3d at 918). *See also Foster*, 2013 WL 3961193, at \*3-4 (holding that the buyers in a foreclosure action could not later file a separate suit to challenge the foreclosure alleging, *inter alia*, fraud, which could have been raised as an affirmative defense in the original foreclosure action).

This case bears very similar facts to *Davis*. The Corporations could have raised fraudulent inducement as an affirmative defense in *Farber I* because the defense is essentially connected to the enforceability of the Note. In fact, the Corporations attempted to raise it, albeit too late and outside the proper procedure. *See Farber I*, 2023 WL 2519411, at \*2. Therefore, the trial court in this matter did not err in determining that the Corporations had waived any claim of fraud in the inducement and were precluded from raising it in this action.

We emphasize that the original trial court found the Note to be enforceable and that this Court affirmed that ruling on appeal. *Id.* at \*2, \*8. The Note's enforceability was the focus of contention in both lawsuits. Therefore, any defense to the Note's enforceability could have been raised in *Farber I* and is now precluded under the doctrine of *res judicata*. Having concluded that the trial court correctly determined that *res judicata* precludes the present lawsuit, we further determine that the remaining issues raised by the Corporations are pretermitted as moot.

## V. Conclusion

For the foregoing reasons, we affirm the trial court's grant of summary judgment in favor of the Personal Representatives. All other issues on appeal are pretermitted as moot. We remand this case to the trial court for enforcement of the judgment and collection of costs assessed below. Costs on appeal are assessed to the appellants, Nucsafe, Inc., and Breton Equity Company Corp.

s/Thomas R. Frierson, II

_____
THOMAS R. FRIERSON, II, JUDGE